(108 So. 314)

No. 27661.

### CALDWELL v. ALTON OIL CO., Inc.

(March 29, 1926. Rehearing Denied May 3, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Mines and minerals ⬦78(5)—Lessor held estopped to assert forfeiture of oil lease, because well was not actually commenced before expiration of time stipulated, where he had full knowledge of drilling operations and acquiesced therein.**

Lessor *held* estopped to assert forfeiture of oil lease, because well was not actually commenced before expiration of time stipulated, where he had full knowledge of drilling operations and made no objection or protest, but acquiesced therein.

2. **Mines and minerals ⬦78(1)—Oil lease, to continue so long as oil or gas was produced from well drilled within certain time, held not to contemplate continuation of lease indefinitely on mere production of oil in quantities totally inadequate as consideration to lessor.**

Oil lease, to continue so long as oil or gas was produced from well drilled within certain time, *held* not to contemplate continuance of lease indefinitely on mere production of oil in quantities not sufficient to compensate lessee and totally inadequate as consideration to lessor, especially where no consideration was paid to lessor for continuance of lease beyond first year.

3. **Mines and minerals ⬦78(1)—Rights and interests of both parties must be considered in determining whether well was producing oil within meaning of lease.**

In determining whether condition of lease providing for its continuance so long as oil or gas was produced from well was complied with, rights and interests of both parties to lease must be considered.

4. **Mines and minerals ⬦78(1)—Royalties of $33.33⅓ per year held not sufficient consideration for continuance of oil lease, so long as oil was produced.**

Under lease providing for its continuance so long as oil was produced from well drilled within certain time, royalties of $33.33⅓ per year on production from well *held* not sufficient consideration for continuance of lease, where original consideration paid for lease was $500 for first year.

5. **Mines and minerals ⬦78(7)—Lessor, on failure of lessee to comply with conditions in oil lease, could sue to cancel lease without putting lessee in default.**

Oil lease providing that, if well was not brought in within time stipulated, lease should terminate as to both parties, was dissolved when conditions were not complied with, and lessor could sue to cancel lease without putting lessee in default.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Suit by Jim Caldwell against the Alton Oil Company, Inc. From the judgment, plaintiff appeals. Reversed and rendered.

Lewell C. Butler, of Shreveport, for appellant.

Pugh & Boatner, of Shreveport, for appellee.

THOMPSON, J. This is a suit to cancel an oil and gas lease affecting 47 acres of land situated in Caddo parish.

The grounds alleged are: (1) That no well was commenced or drilled on said land within the time stipulated in the lease which was one year from the date of the lease; and (2) that neither during the said one year from the date of said lease, nor at any time thereafter, did the lessee or his assigns discover or produce oil or gas in paying quantities from said land.

The lease was executed by the plaintiff to E. M. Brown, Jr., on January 6, 1921, and Brown assigned the same to the Woodbine Oil Company on September, 20, 1922. The last-named company assigned the lease to the Alton Oil Company, Inc., on July 28, 1923.

The relevant provisions of the lease are: (1) That it was made for the sole and only purpose of mining and operating for oil and gas; (2) that a well should be commenced on said land before January 6, 1922; (3) that, should the first well drilled on the land be a dry hole, then a second well should be commenced within 12 months from the expiration of the first 12 months' period; and (4) if oil and gas was discovered, then the lease was to continue so long as oil or gas was produced from such well.

It is somewhat significant that no term for which the lease was to run was stipulated and no provision was made for renewal of the option to drill or the extension of the lease by rental payments.

[1] It appears that, a few days before the date on which operations were required to begin, Brown tried to secure from the plaintiff an extension of the time. In this he was not successful, and on the last day of the term he staked out a location for a well, placed some drilling machinery on the ground, and erected two legs of a derrick. This was followed by active drilling operations which were continued until a well of very limited capacity was brought in some time after the year had expired.

The plaintiff lived on the land, was present, and had full knowledge of the drilling operations, and made no objection or protest, but, on the contrary, acquiesced therein, expressed gratification that actual operations had commenced and the hope that the well being drilled would prove to be a big producer.

In view of such conduct and acquiescence, the plaintiff cannot now be heard to assert the forfeiture of the lease, because the well was not actually commenced before the expiration of the time stipulated.

In the case of Lieber v. Ouachita Natural Gas & Oil Co., 95 So. 538, 153 La. 160, this court held that, where the grantor permitted the grantee to take possession and spend a large amount of money in drilling a well without objection and with knowledge that the property was being developed, he could not, after gas was discovered, repudiate the instrument on the ground that it was potestative and not signed by the grantee.

The rule of estoppel by acquiescence is as applicable to a case where a lease is sought to be declared forfeited for noncompliance with a condition subsequent as it is to a case where it is sought to have a lease canceled which had no valid existence from the beginning, but which was suffered to be executed without objection.

The plaintiff's first ground of attack must fail.

The second ground of complaint is much more serious. The form of the lease is different from most of such leases which have been brought before this court.

The usual and customary stipulation is that the lease shall remain in force so long as oil or gas is produced in paying quantities.

In the instant lease the words "in paying quantities" are omitted.

[2] From which it is argued by the defendant that the quantity of oil produced has nothing to do with the continued life of the lease; that just so long as any oil at all is produced from the well the lease cannot be declared forfeited.

We are not prepared to give our approval to such a proposition.

This court has repeatedly held that the main consideration of such a lease is the development of the land for oil and gas and that the lessee must either develop with reasonable diligence, or give up the lease.

A development that falls short of a reasonable production which would bring a net profit to the lessee and furnish an adequate consideration to the lessor for the continuance of the lease might well be said to be no development at all within the contemplation of the parties.

To hold that any production, however small, and in less than paying quantities, gives to the lessee the right to continue the lease indefinitely and with no obligation to further development, would be contrary to the established rule of jurisprudence, and would be writing for the parties a contract which they never intended to make.

It was never contemplated that the lease under consideration should be continued for all time to come upon the mere production of oil in quantities not sufficient to compensate the lessee and totally inadequate as a consideration to the lessor for continuing the lease.

The fact must not be overlooked that no consideration was paid plaintiff for a continuance of the lease beyond the first year. The prolongation of the lease beyond the first year depended solely on bringing in a well producing either oil or gas in an amount reasonably sufficient to justify its continued operation and which would. at the same time be an adequate consideration to the lessor for suffering the lease to remain in force.

As before noted, the well was drilled by Brown, the original lessee.

He operated it less than 6 months when he assigned it to the Woodbine Oil Company. This company operated the well a little less than a year, when it sold to the defendant.

When the well was first put on the pump, it produced 15 barrels, but thereafter the production never exceeded 2½ barrels at a pumping which was done twice a week.

It is not seriously disputed that, under ordinary conditions and as an independent proposition, a well producing only 5 barrels of oil a week is not a profitable investment and its operation would be abandoned.

In this case, however, the defendant owns several producing wells adjacent to the Caldwell well, and is therefore enabled to operate the instant well with little or no additional expense. Because of this situation the defendant is able to derive a small profit from the limited production after deducting the small expense of operating.

[3] From which it is argued that the well is a producer of oil "in paying quantities" within the meaning of the contract and that the lease must continue so long as that situation prevails.

The contention assumes that the rights of the lessee alone are to be considered in determining whether the production is in paying quantities or not. The rights of the owner of the land are entirely ignored. The contract of lease has not left it to the will of either party to determine whether the production is sufficient to maintain the lease in force. Indeed, such a stipulation would not have been binding. There would have been lacking that mutuality required in all commutative contracts. The rights and interests of both parties must be considered in determining the question at issue.

[4] Under the defendant's own showing, assuming that $400 had been produced from the well in say 18 months, the amount coming to the lessor would have been $50, or say at the rate of $33.33⅓ per year. This amount admittedly would not be considered even a serious, let alone an adequate, consideration for the continuance of the lease. The original consideration paid for the lease was $500 for the first year.

A like situation was presented in the case of Green v. Standard Oil Co. of Louisiana, 84 So. 211, 146 La. 935.

In that case, as in this one, the lessee had drilled only one well which produced so little oil that it would have been abandoned if the lessee had not been able by reason of employees attending other wells in the vicinity to attend to it at no appreciable expense. The court annulled the lease, for the reason that the main consideration of the lease was the development of the land for oil and gas and the defendant had not complied with that obligation.

Counsel for defendant attempts to differ-

entiate the cited case from the instant one on the ground that in the cited case the action was to cancel the lease for failure to reasonably prosecute further development after the drilling of the first well; it being recognized that the lease was a valid and subsisting contract at the time of drilling the first well and it was contended that further development was required by the lease.

We fail to observe any difference in the two cases.

In the instant case the lease declared that the sole object was the development of the land for oil and gas. The lessee was required to commence a well within the first year. If that well turned out to be a dry hole, or a nonpaying well, which amounts to the same thing, then the lessee was required to commence another well following the failure of the first one.

The petition specially alleges the failure of the lessee to comply with the terms of the lease and that the said lease has expired by its own terms.

It is further alleged that neither during the first year nor at any time thereafter has the lessee or his assigns discovered or produced either oil or gas in paying quantities.

These allegations of fact were denied by the defendant, and the question of lack of proper development was thus directly put at issue, and the case was tried upon that issue.

The defendant sought to justify its failure to further develop the land on the ground that one well had been brought in with sufficient production to satisfy the defendant with the small profit which it derived from the oil and that the lessor had no interest in any further development; in other words, the position of the defendant is that, so long as it can derive a small profit from the well, it is under no obligation to develop further and can keep the plaintiff's land tied up under the lease.

This position cannot be supported, either under the terms of the lease or under the law.

Nor is such a position in keeping with just and fair dealing.

No question of putting the lessee in default on the issue of development was pleaded and none could have been successfully pleaded.

[5] The lease provided that if certain conditions were not complied with—that is, to say, if a well was not brought in within the time stipulated, the lease should terminate as to both parties. The conditions were not complied with; hence the lease was dissolved, and the plaintiff had the right to sue to cancel the lease without putting defendant in default. Texala Oil & Gas Co. v. Caddo Mineral Lands Co., 93 So. 788, 152 La. 549.

Our conclusion is that the law, the evidence, and the equities are with the plaintiff and that the lease should be canceled.

In such cases the statute provides for the assessment of attorney fees. The evidence justifies the allowances of a fee of $500.

For the reasons assigned, it is ordered that the judgment appealed from be set aside, and that the lease executed by the plaintiff to E. M. Brown, Jr., on January 6, 1921, and the assignments thereof to the Woodbine Oil Company and from that company to the Alton Oil Company, be and the same are hereby canceled and annulled.

It is further ordered that plaintiff have judgment against the defendant in the sum of $500 as attorney fees, and that defendant pay all costs of this suit.