## No. 2275

### Second Circuit

## HOUSTON v. HIGHLAND OIL CO.

(December 11, 1926. Opinion and Decree.)
(January 28, 1927. Rehearing Refused.)
(March 1, 1927. Writ of Certiorari and Review Denied by Supreme Court.)

*(Syllabus by the Editor)*

1. **Louisiana Digest—Mineral Rights—Par. 11, 12.**

An oil lease which does not contain any provision for failure to operate is not ipso facto cancelled by such failure, and, therefore, the lessor cannot have it cancelled by suit after the condition of failure to operate has ceased to exist.

2. **Louisiana Digest—Mineral Rights—Par. 11, 12.**

Where the evidence shows two wells had been drilled under an oil lease and no wells were drilled or drilling on adjoining property, the lease cannot be cancelled for failure of lessee to develop the property.

3. **Louisiana Digest—Mineral Rights—Par. 11, 12.**

Where there was an initial payment of $8000.00 for an oil lease and the royalties from the well drilled on the property were small and not a sufficient consideration for a continuance of the

lease, the lease will be cancelled by the court.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. E. P. Mills, Judge.

Action by J. D. Houston, et al., against Highland Oil Company.

There was judgment for defendant and plaintiffs appealed.

Judgment reversed.

John B. Files, of Shreveport, attorney for plaintiff, appellant.

R. G. Pleasant, Harry V. Booth, of Shreveport, attorneys for defendant, appellee.

WEBB, J. The plaintiffs, Houston, et al., bring this action against defendant, the Highland Oil Company, to annul a mineral lease which was acquired by defendant on December 1, 1920.

The petition was filed on May 16, 1924, and the plaintiffs' preliminary narrative alleges that the lease is null and void for the following reasons:

(1) That it has lapsed by failure of the defendant company to properly and continuously develop and operate said lease.

(2) That it is void for lack of mutuality and for failure of consideration.

(3) That whatever operations may have been carried on were a mere pretense in order to prevent forfeiture of the lease and was not a development and operation in contemplation of the parties under the terms and conditions of said contract.

The defendant pleaded a general denial, and on trial, June 17, 1924, judgment was rendered in favor of defendant, rejecting plaintiffs' demands, and they appeal.

## OPINION

The lease was given in consideration of an initial or down payment of eight thousand dollars, and it contained the usual stipulations, as that the lessor, grantor, leased, etc., the premises for the sole and only purpose of mining and operating for oil and gas, and provided that the lease should remain in force and effect for a period of three years and so long thereafter as oil or gas or either of them is produced from the land by the lessee; and it further provided that if no well be commenced on the property on or before the 4th of September, 1921, the lease shall terminate as to both parties, unless, on or before that date, the lessee shall pay, etc., to the lessor the sum of twelve hundred dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months, and that like payments may be made and like extensions granted for the term of the lease; that in event the first well be a dry hole, then and in that event if a second well be not commenced on said land within twelve months from the expiration of the last rental period, which rental has been paid, the lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided, and the resumption of payment of rentals shall have the same effect as hereinbefore provided.

The lease also stipulated it may be assigned in whole or in part and that the

lessee shall have the right to remove machinery, casing, etc.

The Highland Oil Company entered into some arrangement with the Butler-McMurray Drilling Co., under which the latter drilled two wells on the property and also attempted to bring back to production the old well which was on the premises and included in the lease, but failed.

The wells which were drilled on the property (which was in the spring of 1921) were equipped and Butler-McMurray Company began operating and producing oil from the wells in December, 1921, for the benefit of itself and defendant, and continued such operations until February of 1923, at which time the property was turned over to Fagan & Grant, who operated the wells and ran the oil produced therefrom until some time in July, 1923, when they quit running the oil but continued to pump the wells until January, 1924, when the property was returned to plaintiff and the Butler-McMurray Company who delivered to D. T. Barr, who was operating the wells and running the oil therefrom at the date of the trial on May 31, 1924.

The defendant received the royalties from the oil during the time it was operated by Butler-McMurray and Fagan & Grant until July, 1923, but did not receive any royalties after such latter period as Fagan & Grant did not run the oil, but plaintiff refused to accept the royalties from D. T. Barr, having notified him before he took possession of the property that the lease was dead.

The plaintiffs contend here that the lease should be annulled on the grounds that the lessor failed to produce oil in paying quantities and that they failed to develop the property and operate the wells, and as there is evidence in the record tending to support these positions, and as defendant apparently concedes that all of such were covered by the pleadings, we shall consider the grounds urged, which we paraphrase as follows:

(1) That the lease should be cancelled for failure to operate.

(2) That the lease should be cancelled for failure to develop.

(3) That the wells which were drilled on the property in the spring of 1921 did not produce oil in paying quantities, and that as the defendant did not drill other wells or pay the rental on the 21st of September, 1922, the lease terminated on that date, or when they notified the defendant through D. T. Barr that the lease was dead.

The last two positions, we think, are based upon the assumption that oil was produced from the property in paying quantities; and, necessarily, if it is held that oil was not produced in paying quantities the contentions that the lease was null for failure to develop or to operate the wells would pass from the case; but in view of these positions having been pressed by counsel we shall consider them.

I.

The evidence shows that the wells were not continuously operated in the sense that they were continuously pumped after they were equipped, but it does not appear that the operations were at any time abandoned. One of the witnesses for plaintiff

stated that the wells were not operated for more than three-fourths of the time, but it is not claimed by him that operations were abandoned; and it is shown that in the operation of oil wells it is often necessary to repair the machinery, which often causes delays; and, further, that in the operation of wells, producing small quantities of oil, it is not usual to continuously pump; and as it appears that the wells were continuously and properly operated after Barr was placed in charge and for three months before the suit was filed, we are of the opinion that the evidence does not show that the wells were not operated.

But conceding that the wells were not operated prior to the time Barr took charge, in the sense or in compliance with the implied obligation of the contract, and that plaintiff had complained prior to the time Barr took charge and that plaintiffs notified Barr that they would contest the validity of the lease, these circumstances would not give to the plaintiffs the right to demand the cancellation of the lease on the ground that the wells had not been operated when at the time of the suit the wells were being properly operated and had been so operated for several months prior to the suit.

The lease does not contain any provision for its forfeiture for failure to operate, and certainly it cannot be that the lease would be ipso facto cancelled, annulled or forfeited at the moment it was not properly operated. The right to claim a forfeiture on such grounds would, of course, arise with condition; but the right would have to be exercised by suit, and if the plaintiff waited until the condition had ceased to exist, the plaintiff would have to rely on some other remedy than that of cancelling the lease; and hence we find that plaintiff has failed to establish the right to cancel the lease for failure to operate.

II.

We do not find any evidence in the record showing that there are any wells drilled or being drilled on adjoining properties which could drain the oil from the premises; neither is there any evidence which indicates the locations of the wells on the tract nor showing that the property has not been sufficiently developed by the two wells, and we cannot assume that such is not the case; and, therefore, we find that plaintiffs have no right to cancel the lease for failure to develop.

III.

The evidence does not show what was the initial production of the wells, that is, when they were first pumped, nor what was the daily average production of the wells during the period from December, 1921, to January, 1924; but it does show that during this period the production did not pay the cost of operation and that the only time the production was in excess of the cost of operation prior to the suit was during the period the property was operated by Barr, at which time the wells were producing a daily average of ten or twelve barrels.

The evidence shows why Barr can operate the wells at a profit is the same as was the case in Caldwell vs. Alton Oil Co., 161 La. 139, 108 South. 314; and it also appears that the rental or royalties received by the plaintiff in the present case was about the same as in that case,

and that the lease in the Caldwell case was practically identical with the lease presented here; and there is not, so far as we can see, any distinction which can be made between the case presented here and the Caldwell case which could be favorable to defendant, and we are of the opinion that under the ruling in the case cited the judgment should be reversed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and that plaintiff have and recover judgment against defendant annulling and cancelling the lease given by J. C. Childs to the Highland Oil Company of date December 1, 1920, covering the S½ of the SE¼ of Section 34, Township 22 north, Range 15 west, in the parish of Caddo, State of Louisiana, as the same appears filed and recorded in the Recorder's Office of Caddo parish, Louisiana.

It is further ordered, adjudged and decreed that defendant pay all costs of suit, and that defendant's rights be reserved to remove machinery, etc., as provided under the lease.

ON APPLICATION FOR REHEARING

Per curiam:

Counsel for defendant, in application for rehearing, contend that the court erred in ordering the cancellation of the lease involved after having held that there had been sufficient development by the lessee; and they strenuously urge that the case of Caldwell vs. Alton Oil Company, cited by this court as authority for its holding in the instant case, does not warrant the

conclusion that the lease should be cancelled.

We ordered the lease in this case cancelled not because there had not been sufficient development but because the royalties received by the lessor from the well drilled on the property were not a sufficient consideration for a continuance of the lease.

The testimony shows that the lessor is receiving almost nothing, and in view of the fact that there was an initial or down payment of $8000.00 cash for the lease, we think the royalties which he has received are not a sufficient consideration for a continuance of the lease.

We think our holding is amply supported by the Caldwell vs. Alton case and by the cases therein cited.

Rehearing refused.