148 So. 699

## PACE LAKE GAS CO., Inc., v. UNITED CARBON CO.

No. 32269.

May 29, 1933.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

George Gunby, of Monroe, for appellee.

OVERTON, Justice.

This suit was brought by plaintiff as the owner of certain lands, located in the parish of Ouachita, for the cancellation and erasure of the inscription of an oil and gas lease, affecting an undivided half interest in and to the minerals in the land.

The lease sought to be canceled is dated May 2, 1924, and was granted for the term of five years to Oscar Nelson by Myron H. Spades and others. Nelson assigned his rights to the United Carbon Company, the defendant herein. The reason alleged for demanding the cancellation of the lease is that the lease has expired by its own limitation.

There was in the suit, while it was pending in the trial court, another demand, calling for a decree annulling the reservation of an undivided half interest in the mineral rights in the land, under which reservation the lease was made, and there was also in that court a plea that the mineral reservation under which the lease was granted was extinguished by the prescription, liberandi causa, of ten years.

The demand of nullity and the plea of prescription of ten years were decided adversely to plaintiff below, and have since been abandoned by it. Therefore, of plaintiff's original demand, there remains only the demand for the cancellation of the lease on the ground that it has expired by its own terms.

In outlining the case, it is necessary to go back of the date on which the lease, sought to be canceled, was granted; that is, back of May 2, 1924. On February 26, 1918, Myron H. Spades and several others of the Spades family were the full owners of the lands leased. On that date Spades and his associates executed an oil and gas lease on the lands here involved and other lands, to W. B. Clarke, for a period of five years, subject to the payment of certain rentals. Clarke assigned the lease to the Standard Oil Company. This company paid the rentals until February 26, 1923, on which date the lease expired, and then executed a release of all of its rights thereunder.

On August 1, 1919, while the lease to Clarke was still in force, Spades and his associates sold to Abe Arent the land, here involved, the deed containing the following reservation, to wit:

It is "agreed and understood that the said Myron H. Spades and his associate vendors save and except from this sale and transfer the entire mineral rights until the expiration of the lease to W. B. Clarke and his assigns, which terminates February 26, 1923, and if nothing develops to continue the lease to W. B. Clarke and his assigns, then the mineral rights are to be owned by said Abe Arent and his assigns and Myron H. Spades

and associate vendors and their assigns, in the proportion of one-half each."

When the Standard Oil Company surrendered its rights under the lease to Clarke, granted by Spades and his associates, Arent and Spades and his associates became, by virtue of the foregoing reservation, the owners of the mineral rights in the proportions of one-half to Arent, who had acquired the surface of the land, and one-half to Spades and his associates.

Matters remained in this situation until May 2, 1924, when Spades and his associates executed an oil and gas lease, in favor of Oscar Nelson, to run for a period of five years, on the payment of delay rentals in lieu of drilling, covering their one-half interest in the mineral rights in the land that they had sold to Arent, and also the entire mineral rights in other lands. Nelson assigned this lease to defendant on March 28, 1925. This is the lease that it is sought to cancel. On January 23, 1926, without mention of the lease to Nelson, although it was of record and still in force, Spades and his associates sold the half interest in the minerals, reserved by them, to Arent; the former having, when the reservation was made, sold the land to the same vendee. On January 19, 1928, Arent conveyed the land in full ownership to plaintiff, of which company he was president.

On February 8, 1929, while defendant's lease, acquired from Nelson, covering a half interest in the lands, conveyed to plaintiff, was in force, defendant commenced a well on a noncontiguous tract, in which plaintiff had no interest, but which was covered by

the same lease as that covering plaintiff's property, namely, the lease by Spades and his associates to Nelson, of date May 2, 1924. Approximately six weeks later defendant brought in a well on the noncontiguous tract, capable of producing commercial gas in large quantities, but did not withdraw any gas therefrom until March 12, 1930, which was nearly a year after the five years, specified as the term of the lease, had elapsed.

On March 2, 1929, while the foregoing well was being drilled, and while the lease to Nelson, acquired by defendant, was still in effect, defendant wrote Arent, who was plaintiff's president, that it had located a well on the land, acquired by plaintiff, in which plaintiff, by the deed to Arent and by the one from Arent to it, had a one-half interest in the mineral rights, asking plaintiff for its approval of the location, and for its assistance in drilling the well. This approval and assistance was refused. Some further correspondence passed between the parties regarding the matter, in which it appears that plaintiff objected to the drilling of the well on its land. Notwithstanding plaintiff's objection, defendant undertook to drill. Defendant's persistence resulted in plaintiff's filing suit for a writ of injunction to restrain defendant from proceeding with the drilling of the well, the suit being based on the ground that defendant's lease was invalid, and on the ground of plaintiff's objection, resting upon its interest in the minerals, to the drilling of the well. The injunction issued and, after a hearing had, judgment was rendered perpetuating it, on the ground, it is conceded, of plaintiff's objection to the drilling of

the well, coupled with its interest in the mineral rights. An appeal was taken from the judgment to this court, but was dismissed by defendant with the consent of plaintiff. This dismissal made the judgment of the district court final, and, as observed by the trial judge, no matter what may be the result of this appeal, defendant stands enjoined from drilling on the land.

This judgment has given rise to two pleas of res adjudicata, one of which was filed by defendant and is directed against plaintiff's attack of nullity on the lease, held by defendant. Since the trial court sustained defendant's plea of res judicata, and since plaintiff has acquiesced in that ruling, defendant's plea need not be considered, for it has passed out of the case. The second plea was filed by plaintiff, and is directed to the support of its allegation that defendant has no right to go upon its lands, and explore for gas or oil, or to produce either therefrom, over its objection. This plea was sustained by the trial judge, although he expressed doubt as to the correctness of the judgment upon which the plea rests, by reason of the ruling of this court in Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1.

The plea of res judicata does not depend upon the correctness of the judgment on which the plea is based, for the power to decide includes the power to decide incorrectly as well as correctly. Such being true, it is not important here whether the injunction suit was decided correctly or not. Suc. of Whitner, 165 La. 769, 116 So. 180; Barbarich v. Meyer, 154 La. 325, 97 So. 459; Grivot v. Louisiana State Bank, 31 La. Ann.

467; Jamison v. New Orleans, 12 La. Ann. 346. The plea, under the issues and under the facts of this case, was properly sustained.

■ Since the lease, which defendant holds, expired by its own terms on May 2, 1929, unless something intervened to prolong its life, it is necessary to ascertain whether anything did intervene. It is urged that the injunction suit had the effect of preventing defendant from exploring the land, under its lease, for oil and gas, and therefore that the suit had the effect of extending the life of the lease, since plaintiff could not, by its own act, to defendant's injury, bring about the termination of the lease.

If defendant had not been successful in perpetuating the injunction, the foregoing position probably would be correct, but it must be borne in mind that it has been judicially and finally determined that defendant was without right, over plaintiff's protest, to explore the land, and therefore that plaintiff had the right to prevent defendant from drilling on it for oil and gas. Hence, to give effect to the judgment, it must be considered that plaintiff was in the exercise of its legal rights in preventing defendant from drilling. No one can be required to make reparation for exercising a legal right in a legal manner, whether it be by the payment of money or the prolonging of the term of a contract. Hence this position should not be maintained.

■ Another reason urged by defendant why its lease has not expired is that the well brought in by it on a noncontiguous tract some four miles distant from plaintiff's land, on March 20, 1929, under the lease, affecting that land, had the effect of continuing the lease in force, as relates to plaintiff's land. The lease contains the following provision on which defendant relies, to wit:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

While defendant completed the well on the noncontiguous tract, within the five-year term of the lease, and found gas in large quantities, yet it withdrew no gas from the well for use until some ten months after the expiration of the five-year period. The mere finding of gas in paying quantities is not a compliance with the contract of lease. Gas must be produced within the required time; that is, withdrawn and reduced to possession for use in commerce. Thus it is said in Summers on Oil & Gas, § 131, p. 421, that:

"Production within the definite term is a condition precedent to the extension of the lease beyond such term. Therefore, if the lessee has, within the definite term, discovered oil and gas within the definite term, but has capped the wells and failed to market the product, the lessor may proceed upon the theory that the lease came to an end by its own terms at the end of the definite term."

Compare Smith v. Sun Oil Co., 172 La. 655, 135 So. 15; Caldwell v. Alton Oil Co., 161 La. 139, 108 So. 314.

Our conclusion is that the life of the lease, so far as concerns plaintiff's land, which alone is in question here, was not prolonged by the drilling on the noncontiguous tract.

The judgment below was in favor of plaintiff directing the cancellation of the lease

to Nelson and the assignment thereof to defendant, so far as these instruments affect plaintiff's land.

The judgment is affirmed.