1 So.2d 76

PARTEN v. WEBB et al.

No. 36064.

March 3, 1941.

Campbell & Campbell, of Minden, and Herold, Cousin & Herold, of Shreveport, for plaintiff-appellant.

Dan W. Stewart, Jr., of Minden, for defendant-appellee.

LAND, Justice.

From a judgment sustaining an exception of no cause or right of action and dismissing the suit, the plaintiff prosecutes this appeal. An exception of no cause or right of action admits as true all of the well-pleaded facts contained in the petition.

(1) Plaintiff avers that he is the owner of 200 acres of land in Webster Parish, Louisiana, under which land he owns certain proportions of the mineral rights. (Tr. pp. 3 and 4.)

That defendant, Webb, notwithstanding plaintiff's ownership of the said proportionate part of the oil, gas and other minerals in the 200 acres, claimed to be the owner of a mineral lease thereon and executed a purported sublease thereof in favor of Hunt Oil Company wherein defendant, Webb, attempted to reserve for himself as the price for said purported sublease a proportion of all of the oil and gas that may be produced from the 200 acres. (Tr. pp. 4 and 5.)

That at the time of the execution of the purported sublease the defendant, Webb, had no right, title or interest in either the lease or in the minerals or in the fee in and under the 200 acres but that, to the contrary, plaintiff was at that time the owner of the proportionate part of the oil, gas and other minerals set forth in his petition, and that defendant, Webb, had no right to attempt to sublease said lands and did so subject to plaintiff's prior rights as owner of the said minerals. (Tr. p. 5.)

Petitioner then sets up that the sole claim of the said Webb at the time of the attempted sublease arose out of an old oil and gas lease executed on November 26, 1921—some 19 years ago (Tr. p. 6); this old lease covering the 200 acres referred to in paragraph (1) of the petition and also another 40-acre tract referred to in paragraph (6) of the petition (Tr. p. 8) and the lease was amended by all of the mineral owners in this other 40-acre tract and the then sublessee of defendant, Webb, the effect of this amendment being to separate the original lease into two separate and distinct lease agreements, one covering the original lease on the 200 acres referred to in paragraph (1) of the petition, and the other being covered by the amended agreement covering the 40-acre tract referred to in paragraph (6) of the petition. (See Tr. p. 22 for the separate agreement.) Petitioner averred that the original lease of November 26, 1921, was for a term of five years from its date and as long thereafter as oil or gas or either of them be produced

from the said land (Tr. top p. 6), and there had been no production from the land covered by the original lease of either oil or gas during the last eight years and, as a consequence, the said lease to defendant, Webb, had lapsed more than eight years ago (Tr. p. 8 par. 7).

Petitioner further averred that, after the separate contract covering the 40 acres referred to in paragraph (6) of the petition was executed, a gas well was drilled under this separate contract on said 40-acre tract and that said gas well produced gas "until the production thereon was so small that said lease contract ceased to remain alive." (Tr. 9, par. 9.) Petitioner alleged that the royalties from the said gas well were paid under the provisions of the separate lease contract covering the 40 acres on which said well was located and only to the mineral owners interested in said 40 acres. Petitioner attached a statement showing that the royalties from this gas well averaged less than 50 cents a day during the latter half of 1937, and the first two months of 1938. (Tr. p. 12.)

Accordingly, the allegations of the petition show that there has been no production under the original lease during the last eight years, and that the production under the separate lease covering the separate 40 acres (which 40 acres is not involved here) was so small that the separate lease, even as to these 40 acres, had expired according to its own terms for want of sufficient production to keep it alive.

After the primary term of a mineral lease has expired and there is no production, or not enough thereon to keep it alive, the lease simply lapses according to its own terms. The term of this lease expires. Talley v. Lawhon, 150 La. 25, 90 So. 427; Smith v. Sun Oil Company, 172 La. 655, 135 So. 15; Logan v. Tholl Oil Company, 189 La. 645, 180 So. 473.

In Logan v. Tholl Oil Company, the lease there considered was for the primary term of eight months and as long as one of said minerals—referring to oil, gas and other minerals—can be produced in paying quantities. The court was called upon to consider whether production which yielded plaintiff a royalty slightly over $5 a month was sufficient to keep the lease alive, and stated in its answer as follows: "Our answer is 'No,' and we therefore conclude that the leased property had ceased to produce oil in paying quantities within the meaning and terms of the lease, and consequently had terminated at the time of the filing of the suit." Page 651 of 189 La., page 475 of 180 So.

Petitioner further averred that defendant, Webb, although the lease he claimed to own had expired according to its own terms, purported to sublet the oil, gas and minerals and the exclusive right to reduce same to possession to the Hunt Oil Company (Tr. p. 4), and that the said Hunt Oil Company had drilled two producing wells on the property referred to in paragraph (1) of the petition. Petitioner then stated that he had informed the said Hunt Oil Company that the said Webb had no right to execute the purported sublease and that he, petitioner, would assert in appropriate proceedings that he is entitled to receive from whoever produces oil on the

said premises the proportionate part of the benefits that the said Webb attempted to reserve to himself in transferring the purported rights to Hunt Oil Company. (Tr. 9 and 10, par. 10.)

Petitioner then prayed for the usual citation and for a decree against the said Webb and Hunt Oil Company holding that petitioner is entitled to receive such proportion of the benefits that the Hunt Oil Company agreed to pay the said Webb as his mineral interest bears to the full mineral interest in the property (Tr. p. 9). Petitioner further prayed for judgment decreeing that, upon the payment to him by Hunt Oil Company of his proportionate part of the price and benefits reserved by the said Webb, said Hunt Oil Company be decreed to be in possession and operating the premises directly under your petitioner "just as though petitioner executed" the said sublease to Hunt Oil Company. (Tr. p. 11.)

The defendant, Webb, contended below, and in this view he was sustained by the trial judge, that plaintiff could not elect to ratify the attempted transfer from defendant, Webb, to Hunt Oil Company and claim the benefits thereof. Defendant urged that the lease which he purported to transfer to Hunt Oil Company was either a valid lease or nonexistent: that if it were a valid lease, defendant, Webb, had the right to transfer it to Hunt Oil Company and plaintiff was without cause to complain or to seek to benefit thereby; that if it were a dead lease, there was nothing that plaintiff could ratify in such a way as to entitle him to receive what the defendant re-

served when he transferred to Hunt Oil Company.

Defendant says that, assuming he had no lease on the property at all and purported to transfer the right to extract the minerals in plaintiff's land to Hunt Oil Company, he and Hunt Oil Company committed a tort and that plaintiff must sue defendant, Webb, and Hunt Oil Company in tort for damages; that no other action is available to plaintiff.

Defendant is clearly laboring under an entire misconception as to the nature of the action set forth in the petition.

This court has considered a number of cases involving the proceeds of the sale of oil rights, or the sale of minerals, or the right to reduce minerals to possession, and also mineral leases.

In Elder v. Ellerbe, 135 La. 990, 66 So. 337, the plaintiff claimed an undivided half interest in a tract of land and also claimed half of the bonus and royalties received by the defendant, Ellerbe, from the Standard Oil Company under a mineral lease from him (page 991 of 135 La., 66 So. 337). The court first considered the nature of the plaintiff's title and held that the plaintiff owned an undivided one-half interest in the tract. Then the court considered the contention of the defendant, Ellerbe, that he was not responsible for half the bonus and royalties received by him from the Standard Oil Company before the institution of the suit because he was a possessor in good faith (135 La. page 994, 66 So. 337). In connection with this latter point, the court held (page 996 of 135 La., page 339 of 66

So.): "Our conclusion is that the defendant Ellerbe owes the plaintiff one-half of the price he received for permitting the Standard Oil Company to deplete this land of its mineral oil and gas. The fact that the plaintiff might have sued to annul the contract of lease between Ellerbe and the Standard Oil Company in so far as it affects her interest in the property does not defeat her right to recover half of the sum received by Ellerbe for the oil taken from the land owned by the plaintiff and defendant jointly."

And defendant was condemned to pay the plaintiff one-half of the price he received from the Standard Oil Company when he leased the land to that company, as well as one-half the royalties accruing to him under said lease.

In Liles v. Barnhart, 152 La. 419, 93 So. 490, the defendant, Gulf Refining Company, secured a lease on a tract of land from Barnhart, who was its lessor. The plaintiff, in fact, owned an undivided one-fifth interest in such tract and sued Gulf Refining Company and Barnhart in solido for damages measured by the value of the oil produced. The court held that the nature of the action was to be determined from the pleadings and the pleadings showed the action to be one in tort and as such prescribed in one year. In giving its reason why the action was not one for money had and received, the court said (page 426 of 152 La., page 492 of 93 So.): "It is possible for one to have a moneyed demand against another upon which he may sue in tort, or upon a contract, or quasi contract. In such instances, he may disregard the contract or quasi contract and bring the action arising from the tort. The form of the action, in such instances, that plaintiff elects to bring, determines the prescription applicable. Morgan's Louisiana & Texas R. R. & S. S. Co. v. Stewart, 119 La. 392, 44 So. 138; Sims v. New Orleans Ry. & Light Co., 134 La. 897, 64 So. 823. Therefore, as to whether the contention of plaintiffs or defendants is correct, as to the applicability of the prescription of one year, involves, in part, an examination of the allegations and prayer of plaintiffs' petition.

"The prayer of plaintiffs' petition, considered in connection with the amended petitions filed, is that they have judgment against Barnhart and the Gulf Refining Company, in solido, for one-fifth of the value of all oil and gas taken from the land, less the reasonable cost of producing the same. This prayer does *not* take into consideration the *money actually received by Barnhart* or the Gulf Refining Company for the oil and gas. It does not adopt or confirm the sales that either made of those minerals, but ignores the price they may have received for them, and calls for judgment for their value. * * * In short, the theory of plaintiffs' petition is that Barnhart and the Gulf Refining Company were joint tort-feasors, and it is upon that theory that they are sued in solido for the value of the oil and gas. * * * In no sense is it a suit for money had and received." (Italics ours.)

There were two dissents in the Liles case. Justice Dawkins construed the pleadings as being one for money had and re-

ceived, even though "the suit is not a ratification of the lease which Barnhart gave to the Refining Company, * * * nor is it a demand to be paid their part of the consideration flowing to the lessor thereunder." (page 440 of 152 La., page 497 of 93 So.).

After referring to the Codal articles on quasi contracts he said (page 441 of 152 La., page 497 of 93 So.): "These articles together with others appearing in this chapter, show the obligation to restore or repay what has been unduly received springs from some one of the relations giving rise to a quasi contract, which relations originate from contracts, either express or implied, or from some special duty expressly imposed by law with respect to a person or thing."

And Justice St. Paul, dissenting on this point, said (page 444 of 152 La., page 499 of 93 So.): "But where the unlawful act of one person not only damages another but also enriches the wrongdoer, there arises an action both ex delicto and quasi ex contractu, and the action to recover the unlawful gain is barred only by the prescription of ten years. See Kohn v. Carrollton, 10 La.Ann. 719; Pickerell v. Fisk, 11 La.Ann. 277; Devot v. Marx, 19 La. Ann. 491; Normand v. Edwards, 23 La. Ann. 142; Gaty, McCune & Co. v. Babers, 32 La.Ann. 1091; McKnight v. Calhoun, 36 La.Ann. 408; [Heirs of] Burney v. Ludeling, 47 La.Ann. 73, 16 So. 507 (and authorities). See, also, C.C. 2292, 2294, 2301, 2315, 3506, 3509.

"And where a person has conferred on him several remedies to enforce an obligation, he has the right to select which of those remedies he will follow, and if he chooses, may waive his action ex delicto and pursue his action quasi ex contractu. See Morgan's Louisiana & Tex. R. R. & S. S. Co. v. Stewart, 119 La. 392, 44 So. 138."

And in the companion case of Liles v. Texas Company, 166 La. 293, 117 So. 229, a similar demand was considered by the court. The court construed the petition there as it did in the prior case reported in 152 La. 419, 93 So. 490, supra, as being one ex delicto. However, the court did take occasion to say (page 296 of 166 La., page 230 of 117 So.): "If the plaintiffs had based their cause of action upon a contract or quasi contract, by suing for the amount of money due them under the contract of lease, by virtue of which the defendant and its predecessor produced and appropriated the oil, the plaintiffs would have been compelled thereby to ratify the contract and to claim only the royalty due them under it."

Here the plaintiff is ratifying the contract by which Hunt Oil Company acquired the right to go upon and produce oil from his land and is praying for judgment only for the royalties that the Hunt Oil Company agreed to pay to the defendant, Webb: "⅛ of such production produced from the S. W. ¼ of the N. E. ¼; the S. E. ¼ of the N. W. ¼; and the N. E. ¼ of S. W. ¼ of said Section 14;

"⅞ of such production produced from the N. W. ¼ of the S. E. ¼ of said Section 14; and

"¾ of such production produced from the S. W. ¼ of the S. W. ¼ of said Sec-

tion 13, subject to the maximum amounts reserved by the said Webb in his said purported sub-lease;

"And that petitioner have further judgment decreeing that upon the payment to him by the said Hunt Oil Company of his proportionate part, as above stated, of the interest reserved by said Webb, that he have a decree holding that said Hunt Oil Company is in possession and operating the said premises directly under your petitioner and free of all claim of the said Webb to any interest or payment arising out of said lease just as though petitioner executed said sub-lease to Hunt Oil Company." (Tr. pp. 10 and 11.)

In Louisiana Canal Co., Inc., v. Heyd, 189 La. 903, 181 So. 439, 116 A.L.R. 1260, the defendant, Heyd, owned a half section of land. He sold 4 acres, or one-eightieth of the total acreage, to plaintiff, who failed to record its deed. Then the defendant, Heyd, leased the entire tract, including plaintiff's 4 acres, to one Bennett, who assigned to Shell Petroleum Corporation. Plaintiff then recorded his purchase, ratified the lease executed by defendant, Heyd, and contended that he was entitled to the proportion of the royalties that his 4 acres bore to the entire tract, 320 acres, or one-eightieth of the royalties. The court considered that the plaintiff, when it ratified the lease, was in the same position as though the plaintiff itself had executed the lease on the property. The court said (page 909 of 189 La., page 441 of 181 So., 116 A.L.R. 1260): "Plaintiff is as firmly bound as if it had joined Heyd in making the lease. The effect of the ratification was to make the contract a lease by Heyd and plaintiff, covering both tracts of land, the small 4-acre tract owned by plaintiff and the larger tract owned by Heyd. * * *

"While plaintiff did not originally join Heyd in making the lease, the effect of accepting its share of the delay rentals after it had knowledge of all the facts was to make the contract its own. * * * After plaintiff had accepted the contract, it was no longer Heyd's lease but the lease of both, covering two adjacent tracts of land, made to one individual who assumed the obligation of delivering to the lessors as royalties, in case there was production, one-eighth of the oil produced. This was the consideration of the lease, aside from the delay rentals which were paid in order to keep the lease alive until operations were begun. The consideration which the lessee received was the privilege, granted by the lessors, of going upon and exploring the land covered by the lease for the production of minerals."

So, in the instant case, defendant, Webb, attempted to grant Hunt Oil Company the right of going upon and exploring the land for the production of minerals. Plaintiff ratified this grant, and when he did so the situation is the same as though both plaintiff and defendant had joined in the same contract authorizing Hunt Oil Company to go on the land and explore. But the defendant, Webb, did not own all of the right to go on the land to explore, just like Heyd in the cited case did not own all of the similar right there. The defendant, Webb, therefore, has no right to keep

all of the consideration paid by the Hunt Oil Company, but must divide what he received with the plaintiff, Parten, in the proportion that each contributed to the rights received by Hunt Oil Company. In the Heyd case, the court concluded that the plaintiff was entitled to receive one-eightieth of the royalty under the terms and conditions of the lease ratified by the plaintiff and executed by the defendant, Heyd. For similar reasons, the plaintiff here is entitled to receive his proportionate part of the royalties that Hunt Oil Company agreed to pay for the rights it received from both defendant, Webb, and from plaintiff.

■ (2) Defendant suggested below that plaintiff should have first brought a suit against defendant, Webb, and Hunt Oil Company to have declared dead the old leases on the property. However, such was unnecessary. As we have seen, the allegations are to the effect that these old leases were dead and that defendant, Webb, had no rights thereunder. If the old leases on the property had expired according to their terms, there was no need for plaintiff here to bring suit to have them so declared before plaintiff brought this suit for money had and received by the defendant, Webb, for plaintiff's use and benefit. Nor was a prior putting in default necessary where the lease is alleged to have expired *according to its own term:* the lapse of five years and no paying production. Talley v. Lawhon, 150 La. 25, at page 28, 90 So. 427; Smith v. Sun Oil Company, 172 La. 655, at page 657, 135 So. 15; Caldwell v. Alton Oil Co., 161 La. 139, at page 146, 108 So.

314; Pace Lake Gas Co. v. United Carbon Co., 177 La. 529, at page 536, 148 So. 699.

■ (3) Defendant also complained below that plaintiff should sue defendant, Webb, and Hunt Oil Company in tort if the old leases were dead. But we repeat that the nature of the action that plaintiff chose to bring rests with plaintiff and not with defendant.

In Morgan's Louisiana & T. R. & S. S. Co. v. Stewart, 119 La. 392, 44 So. 138, it was held, paragraph 4, Syllabus: "Where a person has conferred on him by law several remedies to enforce an 'obligation' or 'duty' legally owing to him, he (and not the person owing the obligation or duty) has the right to select the particular remedy he shall have recourse to. If he has the right to an action 'ex delicto,' he may avail himself of it, but, if he chooses to do so, he can waive it and sue by virtue of a statutory right of action if one has been given to him. The action brought by the plaintiff is one expressly granted by law."

■ (4) Defendant, Webb, also argues here for the first time that the petition does not state a cause of action because it does not in express terms say that there is no production from the W. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of N. E. $\frac{1}{4}$ of Section 14, and that, since it appears somewhere in the record that this 20-acre tract was included in the original lease from Babb to Webb, of date November 26, 1921, there may be production from this 20 acres; and, if so, such production would keep the entire lease alive.

Had defendant presented this idea below, and had the facts otherwise been cor-

rect, plaintiff could have easily amended to allege that there was no production from this 20-acre tract during the last ten years. However, the record shows that this 20-acre tract was covered by a separate lease. When defendant, Webb, attempted to sub-lease plaintiff's property to Hunt Oil Company, these 20 acres were not included (Tr. p. 16). Since the 20 acres referred to by counsel for defendant, W. ½ of S. E. ¼ of N. E. ¼, were not comprised within the old leases involved in this suit, it was unnecessary for the plaintiff to have alleged that no production had been had therefrom during the last ten years.

Our conclusion is that plaintiff's petition sets forth a proper and sufficient cause or right of action.

■ (5) Defendant, on page 18 et seq. of his brief, argues his exception of non-joinder or lack of proper parties, plaintiff and defendant.

The reply brief of plaintiff is a complete answer to the argument of counsel for defendant as to this exception:

"Exception of Nonjoinder of Parties

"After plaintiff filed his original petition, defendant Webb filed an exception to the effect that plaintiff's petition failed to make joinder of parties plaintiff and defendant (Tr. p. 25). Counsel for plaintiff then asked counsel for defendant Webb what parties-plaintiff and what parties-defendant were omitted from the suit. Counsel for defendant Webb advised plaintiff that he was referring to the parties referred to in the supplemental petition (Tr. p. 29), as having an interest in the subject matter of the suit, and therefore necessary parties-defendant. Counsel for plaintiff thereupon filed the supplemental petition making these parties so referred to parties-defendant (Tr. pp. 29, 31). Thereupon, the exception of non-joinder filed by counsel for defendant Webb was overruled (Tr. p. 2). This action by the Court was taken without argument and after statements made to the Court by counsel for plaintiff and defendant, Webb, under the impression that counsel for defendant was satisfied that all necessary parties had been brought in by the amended petition.

"In view of this situation, it comes as a surprise for counsel for defendant Webb to contend that the necessary parties are still not before the Court. In fact, some of the parties brought in by the amended petition filed exceptions to the effect that they had no interest in the suit and should be dismissed therefrom. This was accordingly done (Tr. p. 2), after statements were made to the Court in the presence of counsel for defendant Webb that these parties had absolutely no interest in the outcome of this suit.

"Be all of this as it may, the fact remains that the exception of nonjoinder by defendant Webb was overruled on September 6, 1940 (Tr. p. 2). Thereafter, defendant Webb filed an exception of no cause or right of action, which was argued on September 17th, sustained on November 8th, and judgment signed on November 19th, dismissing plaintiff's suit (Tr. 2). Plaintiff appealed from this judgment dismissing his suit. The appeal was duly

215

lodged here. Defendant has not answered the appeal.

"On oral argument before this Court, counsel for defendant Webb stated he was not insisting on this exception—that he wanted the point raised by his exception of no right of action passed upon by the Court.

"Further, nobody else is interested in this suit excepting the plaintiff Parten and the defendant Webb. The discussion made on the argument and in our original brief makes this apparent. These other parties have made new lease contracts on their respective mineral interests. Therefore, there could be no point in dismissing the suit to make other people parties thereto who have no interest whatsoever in the outcome hereof."

It is clear from the above statements that the exception of nonjoinder is not well founded and is therefore overruled.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from by plaintiff, sustaining the exception of no cause or right of action filed herein by defendant, and dismissing plaintiff's suit, be and is hereby annulled and reversed.

It is now ordered that this case be remanded and reinstated upon the docket of the Twenty-Sixth Judicial District Court for the Parish of Webster, and be proceeded with in due course, and according to law. The defendants are to pay the costs of appeal. All other costs are to await the final judgment in this case.

ODOM, J., takes no part.