103 P.2d 124

STATE ex rel. SHELL PETROLEUM COR-
PORATION v. WORDEN, Commissioner
of Public Lands.

No. 4473.

Supreme Court of New Mexico.

May 27, 1940.

J. O. Seth and A. K. Montgomery, both of Santa Fe, and A. E. Groff and Barksdale Stevens, both of Houston, Tex., for relator.

Carl B. Livingston, of Santa Fe, Filo M. Sedillo, Atty. Gen., and Fred J. Federici, Asst. Atty. Gen., for respondent.

E. R. Wright, of Santa Fe, and F. T. Baldwin, of Houston, Tex., amici curiæ.

BRICE, Justice.

This is an original proceeding, permitted because of great public interest in the questions involved, praying that a writ of mandamus issue requiring the respondent, as Commissioner of Public Lands of the State of New Mexico, to accept a rental of $40 tendered him by relator, as advance rental on an assignment of a portion of a certain oil and gas lease; and to otherwise recognize said assignment. An alternative writ was waived, and respondent filed his return, stating that he had refused to accept the rental because the lease had expired. The case is before us on the information and return, without testimony or agreed facts.

The facts not denied in the return, essential to a decision, are as follows:

An oil and gas lease in statutory form was issued by the State of New Mexico to P. C. Klingsmith on December 4, 1933, embracing 320 acres of state land in Lea County, New Mexico; 40 acres of which are situated in Sec. 20, Twp. 19 S., Rge. 37 E., and 280 acres in Sec. 13, Twp. 18 S., Rge. 35 E.

By the terms of said lease the State of New Mexico in consideration of " * * * the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, the said lessor has granted and demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee, exclusively, for the sole and only purpose of exploration, development and production of oil and/or gas thereon and therefrom with the right to own all oil and gas so produced and saved therefrom and not reserved as royalty by the lessor under the terms of this lease, * * * subject, however, to the conditions hereinafter set out, the following described land situated in the County of Lea, State of New Mexico, and more particularly described as follows: (Here follows a description of the land by metes and bounds). * * *

"To have and to hold said land, and all the rights and privileges granted hereunder, to and unto the lessee for a primary term until December 8, 1933 from the date hereof, and as long thereafter as oil and gas in paying quantities, or either of them is produced from said land by the lessee, subject to all of the terms and conditions as hereinafter set forth."

Among the conditions of the lease are the following, which are material to a decision of this case:

."(1) Subject to the free use without royalty, as hereinbefore provided, the lessee shall pay the lessor as royalty one-eighth part of the oil produced and saved from the leased premises, * * *

"(2) The lessee agrees to pay the lessor the one-eighth of the net proceeds derived from the sale of gas from each gas well. * * *

"(4) It is expressly agreed that the consideration hereinbefore specified is a good, valid and substantial consideration and sufficient in all respects to support each and every covenant herein, including specifically the option granted the lessee to prevent the termination of this lease from year to year, by the payment or tender of the further rental hereinafter provided for.

"An annual rental at the rate of fifty cents per acre during the primary term hereof shall also become due and payable to the lessor by the lessee or by any transferee or assignee of the same or any part hereof, where such transferee or assignee has been recognized, and such transfer or Assignment approved by the lessor as hereinafter provided, upon each acre of the land above described and then claimed by such lessee, transferee or assignee hereunder, and rental during secondary term as provided in Paragraph 15 herein shall be due and payable in advance to the lessor on the 8th day of December in each year during the time this lease is in force * * *

"(6) All payments due hereunder shall be made on or before the day such payment is due, * * *

"(7) The lessee with the consent of the lessor, shall have the right to assign this

lease in whole or in part. Provided, however, that no assignment of any undivided interest in the lease or in any part thereof nor any assignment of less than a legal subdivision shall be recognized or approved by the lessor. Upon approval in writing by the lessor of an assignment, the assignor shall stand relieved from all obligations to the lessor with respect to the lands embraced in the assignment and the lessor shall likewise be relieved from all obligations to the assignor as to such tract, and the assignee shall succeed to all of the rights and privileges of the assignor with respect to such tracts and shall be held to have assumed all of the duties and obligations of the assignor to the lessor as to such tracts. * * *

"(13) Upon failure or default of the lessee or any assignee to comply with any of the provisions or covenants hereof, the lessor is hereby authorized to cancel this lease and such cancellation shall extend to and include all rights hereunder as to the whole of the tract so claimed, or possessed by the lessee or assignee so defaulting, but shall not extend to, nor affect the rights of any other lessee or assignee claiming any portion of the lands upon which no default has been made; provided, however, that before any such cancellation shall be made, the lessor shall mail to the lessee, or assignee so defaulting, by registered mail, addressed to the post-office address of such lessee or assignee as shown by the records of the State Land Office, a notice of intention of cancellation specifying the default for which cancellation is to be made, and if within 30 days from the date of mailing said notice the said lessee or assignee shall remedy the default specified in said notice, cancellation shall not be made.

"(14) All the terms of this agreement shall extend to and bind the heirs, executors, administrators, successors and assigns of the parties hereto.

"(15) If the lessee shall have failed to make discovery of oil and/or gas in paying quantities during the primary term hereof, the lessee may continue this lease in full force and effect for an additional term of five years and as long thereafter as oil and gas in paying quantities, or either of them is produced from the leased premises, by paying each year in advance, as herein provided, double the rental provided herein for the primary term, * *"

From these covenants and conditions we conclude that the lessee by paying the annual rentals provided during the primary term of five years and for the additional term of five years, has until the end of the ten years within which to produce oil or gas from the leased land in paying quantities; and when so produced, the lease is thereby continued in force "as long thereafter as oil and gas, or either of them in paying quantities, is produced from said land by the lessee," subject to the continued payment of the specified rentals, and subject to the implied covenant hereinafter mentioned.

■ The object of the lessor in making the lease was to secure the development of the leased premises for oil and gas. There is an implied covenant on the part of the lessee (in the absence of any expressed on the subject as in this lease) that after production of oil and gas in paying quantities is obtained, he will thereafter continue the work of development for production of oil and gas with reasonable diligence as to the undeveloped portion of the leased land. Nigh et al. v. Haas et al., 139 Kan. 307, 31 P.2d 28; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, opinion by Justice Van Devanter; Drummond v. Alphin, 176 Ark. 1052, 4 S.W.2d 942; Hughes v. Cordell, 174 Ark. 757, 296 S. W. 735; Cox et al. v. Sinclair Gulf Oil Co., Tex.Civ.App., 265 S.W. 196; Cole Petroleum Co. v. United States Gas & Oil Co., 121 Tex. 59, 41 S.W.2d 414, 86 A.L.R. 719; Texas Co. v. Curry, Tex. Civ.App., 229 S.W. 643; Jackson et al. v. Kent et al., 106 W.Va. 37, 145 S.E. 572; 2 Summers on Oil & Gas, Perm. Ed., § 398 and supporting authorities cited to that text.

If, therefore, no assignment of any part of the leased lands had been made by the lessee Klingsmith, and he had produced oil or gas in paying quantities from a well at any place on the leased premises, he would have been bound by this implied covenant to develop with reasonable diligence the undeveloped portion of the lease.

■ What constitutes reasonable diligence in such cases depends upon the facts of each case (Shell Petroleum Corp. v. Shore, 10 Cir., 72 F.2d 193; Brimmer v. Union Oil Co., 10 Cir., 81 F.2d 437, 105 A.L.R. 454; Jacob v. Stephenson, Tex.Civ.App., 254 S.W. 1117; 2 Summers on Oil & Gas, Perm.Ed., § 398), a question not before us here.

On April 30, 1935, the lessee Klingsmith assigned that part of the lease covering the 40-acre tract to the Oil Well Drilling Company, which completed a well thereon on September 6, 1936, which has since its completion produced oil in commercial quantities.

On June 25, 1936, the lessee assigned the lease on the 280 acre tract to S. Hansen, who re-assigned 40 acres thereof (SE¼SE¼ of Sec. 13) to relator on March 17, 1937.

All assignments were upon the form prepared by the Commissioner of Public Lands, and all were approved by him.

The annual rentals due under the terms of the lease were paid on the 40-acre tract assigned to relator until December 7, 1938. On that date relator tendered to respondent the sum of $40 as rental thereon for the year beginning December 8, 1938, which respondent refused to accept, claiming that the lease had expired by its terms because oil in commercial quantities had not been produced therefrom prior to December 8, 1938; on which date he contends, the secondary term ended unless oil and gas

in paying quantities, or either of them, had been produced therefrom prior thereto. Relator has made no exploration for oil and gas on the 40-acre tract in question.

Each of the assignments provided:

"The assignee assumes and agrees to perform all obligations to the State of New Mexico insofar as said described lands are affected, and to pay such rentals and royalties, and to do such other acts as are by said lease required as to the above described subdivision, to the same extent and in the same manner as if the provisions of said lease were fully set out herein.

"It is agreed that the Assignee shall succeed *to all the rights, benefits and privileges granted the lessee by the terms of said lease, as to the lands above described,* except that it is agreed that said Assignee shall be entitled to no exemption from rentals on account of any well or wells commenced in accordance with the terms of said lease unless said wells shall be located on same portion of the lands covered by this assignment." (Emphasis ours).

■ It is obvious that the respondent is in error in asserting that the assignment to relator by Klingsmith's assignee and its approval by the Commissioner of Public Lands, was in effect an original lease from the State to it. No such terms appear in the assignment. If such had been the intention of the State, whose printed forms of assignment were used,

it could and would have been so provided; or the State would have required the assignee to execute a new lease. But instead, the assignment in effect provided that the relator should assume and perform *all the obligations of Klingsmith* to the State "insofar as said described lands are affected;" and "do such other acts *as are by such lease required* as to the above described subdivision, * * *"

Looking to the lease, we find that after oil or gas is obtained from any part of the leased land in paying quantities, the lease continues in force so long as it is so produced, subject to the covenants we have mentioned.

Now, if relator succeeded to all the rights, benefits and privileges granted to the original lessee as to the tract in question, he succeeded to those benefits and privileges which resulted from the production of oil on any part of the lease exactly as though no part had been assigned, subject of course to all express and implied covenants of the lease which affect such rights.

■ The question has been before the courts innumerable times and our conclusion is supported by the great weight of authority. It is true, as respondent asserts, that the lease in question is statutory, and in some respects is different from the oil lease ordinarily used in leasing private lands. But we find that the difference is not such as to materially affect the rights and duties of assignees. Gypsy Oil Co. **v.** Cover,

78 Okl. 158, 189 P. 540, 11 A.L.R. 129 and annotation; Galloway v. Kroeger, 169 Okl. 645, 34 P.2d 250; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928; Cowman et al v. Phillips Petroleum Corp., 142 Kan. 762, 51 P.2d 988; Pierce Oil Co. v. Schacht, 75 Okl. 101, 181 P. 731; Dow et al. v. Worley, 126 Okl. 175, 256 P. 56; Wilson v. Purnell et al., 199 Ky. 218, 250 S.W. 850; 2 Summers on Oil & Gas., Perm.Ed., § 295.

Klingsmith's implied covenant in the original lease (to develop with reasonable diligence the undeveloped portion of the lease, after the discovery of oil or gas on any part of the leased land in paying quantities) the relator agreed to perform "insofar as said described lands (land in suit) are affected."

The relator, therefore, was obliged under the terms of its assignment, to proceed with such reasonable diligence as the facts and circumstances required, to perform the development work on the tract in question after oil and gas were produced in paying quantities in 1936 on another tract covered by the lease, considering the lease as a whole.

· The relator is therefore in error in asserting "that by virtue of Oil Well Drilling Company having so secured paying production of oil on its assigned part of said original leased premises, the term of said lease was continued in full force and effect under the provisions thereof as long thereafter as oil in paying quantities is · produced from the leased prem-

ises, subject only to the cash rental provided by the terms of the lease."

The lease, following the statute (Sec. 132-411, Sts.1929), provides for its cancellation for "non-payment of rentals or nonperformance by the lessee of any provision or requirement of the lease," but this can be done only after thirty days' notice of intention to cancel said lease specifying the default for which the lease is subject to cancellation; and providing that if within thirty days after the mailing of said notice to the lessee or assignee, he shall remedy the defaults specified in such notice, then no cancellation of said lease shall be entered by the Commissioner, but otherwise the lease shall thereupon terminate.

■ The case is presented upon the information and return, without testimony or agreed facts. We are authorized to consider only the undenied facts alleged in the information. The allegation to the effect that relator had performed all of the covenants required of it by the terms of the lease is denied by respondent.

It appears from the record that four years have elapsed since the one well was developed on the lease, and relator has performed no developing work on the tract in suit. We are not apprised whether the Commissioner of Public Land claims that relator's implied covenant to use reasonable diligence to develop the land for oil and gas has been broken; and if so, whether he has given re-

lator notice of his intention to cancel the lease for failure to comply with such implied covenant if the default was not remedied; nor whether such default, if made, has been remedied. We are, therefore, unable to say that relator's assignment of lease is in good standing, and that respondent should be compelled to receive the $40 tendered him.

 But in any event the relator's title is not affected by the refusal of respondent to accept the tendered payment. The parties agree that such tender was made. If the lease is otherwise in good standing it is immaterial that the Commissioner of Public Land has refused the tender.

What delinquencies on the part of the relator constitute a breach of the implied covenant to exercise reasonable diligence in developing the property, and if breached, what acts on the part of relator, after the receipt of the thirty day notice as provided by the statute and lease, are necessary to "remedy the default," are questions not before us, and regarding which we express no opinion.

While we are unable to say from the admitted facts that relator's lease is in good standing, we believe we have determined the real issues in the case.

The information will be dismissed at relator's cost. It is so ordered.

SADLER, ZINN, and MABRY, JJ., concur.

BICKLEY, Chief Justice (concurring specially).

The result is correct but I see no reason to repudiate uniform administrative rulings of years' standing, supported as they are by the opinions of the Attorney General then and now and other eminent authorities cited in the briefs of respondent.

The interpretation contended for by the respondent is sound, tends to simplicity of administration, and I adopt it.