179 P.2d 263

**LIBBY v. DE BACA et al.**

No. 4976.

Supreme Court of New Mexico.

March 1, 1947.

H. A. Kiker and Manuel A. Sanchez, both of Santa Fe, for appellants.

Seth and Montgomery, of Santa Fe, for appellee.

McGHEE, Justice.

This is an appeal from a decree cancelling a ten year "unless" oil and gas lease, for non-compliance with the implied covenants to diligently develop and operate the lease following discovery of carbon dioxide gas ($CO_2$) in paying quantities. We will refer to the parties as they appeared in the trial court.

The plaintiff is the son-in-law of the lessor and acquired title shortly prior to the filing of this suit with knowledge of the rights of the defendants. The lease was made March 4, 1935, covering 26,000 acres in Harding County, and the only consideration was the promise of development or the annual payment of one dollar per acre as delay rental. The beginning of drilling operations was delayed beyond the sixty day period provided in the lease and there is controversy as to whether they started in 1935 or 1936, but as the lease was validated by a writing signed by de Baca December 2, 1936, the date is immaterial.

The trial court made the following findings of fact, all of which we find are sustained by substantial evidence.

### Findings of Fact

#### I.

"The answering Defendants' right, title or interest (if any) in the premises is based upon that certain Oil and Gas Mining Lease dated March 4th, 1935, between Plaintiff's predecessors and Defendant, John P. Healy.

#### II.

"After the making of the lease of March 4th, 1935, an extension of time was granted to lessees in which to begin drilling operations.

#### III.

"The first drilling operations under the aforesaid lease were begun on or about June, 1936, and prior to that time, F. C. de Baca, one of the lessors, had repeatedly

notified said John P. Healy that the lease was subject to cancellation by reason of his failure to begin operations for drilling a well within 60 days, as provided in said lease.

IV.

"That some time during the latter part of 1936 or in 1937, carbon dioxide gas was discovered in the Waddell and McFan well, which is located in Section 19, Township 20 North, Range 31 East, and thereafter certain machinery and equipment was installed for the purpose of manufacturing dry ice from said gas, and a small amount of such ice was produced. Shortly after such production, the persons operating said well and manufacturing equipment, for some reason not appearing in evidence, removed all said machinery and equipment from said location, and no one has attempted to operate said well and produce gas therefrom subsequent to that time.

V.

"On November 30th, 1936, Fulgencio C. de Baca and Nestor C. de Baca, predecessors in interest of the Plaintiff herein, in writing acknowledged that compliance with the terms of the said lease had been made, and that said lease on said 30th day of November, 1936, had become validated and was then in full force and effect.

VI.

"That although said F. C. de Baca threatened on various occasions to cancel said lease because of failure by the lessee, or others, to drill on the property, as provided therein, nevertheless, said de Baca made it known he wanted drilling operations to proceed by lessees, and did grant several extensions of time within which to begin or to renew drilling operations at times when said Lease was in default; that no consideration was paid to said de Baca, or other lessors, for reinstating or validating said lease on such occasions.

VII.

"That the said threats of cancellation of said lease had little or no deterring effect upon said John P. Healy, and others claiming through or under him in said lease, nor did such threats hinder or materially interfere with the drilling or development operations.

VIII.

"That no rental was paid to the lessors and owners of the property in said lease at any time, although repeated demands for such payments were made, or that in lieu of such payment, development be commenced; the expected royalties by the lessors was the principal consideration for granting said lease.

IX.

"Prior to the 13th of May, 1936, lessors had given notice in writing to lessees that said lease was terminated and forfeited, and on said 13th day of May, 1936, lessors executed an instrument in writing in which they withdrew said notice of termination

and forfeiture of said lease, and thereafter the well was brought in.

### X.

"That on or about December 10th, 1938, a considerable flow and pressure of carbon dioxide gas was discovered on the property in the so-called Head & Miller well at approximately 2142 feet. Thereafter said Healy and his associates made numerous efforts to finance a plant to be built on the property for the purpose of making dry ice from said gas.

### XI.

"That following such discovery of carbon dioxide gas, the said de Baca and John P. Healy discussed development of the property by the construction of an ice manufacturing plant and the sale of such product, and said de Baca was anxious and willing that said Healy and associates operate the property and market such product; that the said Healy and his associates were unable to finance such operations, and were unable to locate others willing to finance such operations, with the result that no marketing of the product has been made.

### XII.

"The Court finds that the lessees, in their drilling operations, failed to stop a leak of gas from said discovery well, known as the Head & Miller well, in Section 31, Township 20 North, Range 31 East, and a considerable waste of the gas has resulted from such drilling operations since shortly after discovery and continuing to the date of trial herein.

### XIII.

"The Court finds that said Defendants, as lessees, have not been diligent in their efforts to develop the property and to market the product thereform subsequent to such discovery of gas, but instead of such development and marketing, have relied upon such discovery in paying quantities as sufficient to extend or continue said lease in full force and effect.

### XIV.

"That thereafter, the Waddell and McFan well was completed as aforesaid, and after the aforesaid writing had been executed by said Fulgencio C. de Baca and Nestor C. de Baca, acknowledging that said lease was in full force and effect, lessees began the drilling of a second well, known as the Head and Miller well, and thereafter, on December 10th, 1938, the said well came in with a flow of $CO_2$ gas of approximately 3,950,000 cubic feet per day of 24 hours with a pressure of 510 pounds; that none of such gas so discovered has been saved and marketed from said well.

### XV.

"On September 6th, 1938, after gas in considerable quantity had been discovered, lessors, predecessors in title of Plaintiff herein, instituted suit No. 1483 on the docket of the District Court of Harding County, New Mexico, seeking therein to cancel

and annul the lease on said premises held by lessee; said suit No. 1483 in Harding County, New Mexico, was dismissed upon motion of the plaintiff, by order of Court, on March 9th, 1939.

## XVI.

"On October 25th, 1939, lessors, the predecessors in title of Plaintiff, filed suit against lessees, seeking therein to cancel and annul said lease; on April 14th, 1941, on motion of the Plaintiffs, said cause No. 1547 was by order of the Court dismissed.

## XVII.

"The present suit, No. 1704 on the docket of the District Court of Harding County, was filed on the 23rd day of October, 1942."

To which we add the following:

a. The defendants have expended considerable sums of money, (probably in excess of $50,000) in the drilling of the two wells and have received no returns from them.

b. After December 7, 1941, it was impossible to provide materials with which to build a plant for the manufacture of dry ice.

c. That at and prior to the filing of each of the suits by de Baca the defendants had defaulted in the performance of their obligations under the lease, after demand for performance and a reasonable time therefor had expired.

■ We have considered the assignments of error based on the refusal of the trial court to adopt the defendants' requested findings of fact, and find that except as added by us above, they were covered by adverse findings, were immaterial or recitations of evidentiary facts.

■ We here reaffirm our holding in State ex rel. Shell Petroleum Corp. v. Worden, 44 N.M. 400, 103 P.2d 124, 126, as follows: "The object of the lessor in making the lease was to secure the devolopment of the leased premises for oil and gas. There is an implied covenant on the part of the lessee (in the absence of any expressed on the subject as in this lease) that after production of oil and gas in paying quantities is obtained, he will thereafter continue the work of development for production of oil and gas with reasonable diligence as to the undeveloped portion of the leased land."

But the duty of lessee does not end there. He must proceed with reasonable diligence, as viewed from the standpoint of a reasonably prudent operator, having in mind his own interest as well as that of the lessor, to market the product. 2 Summers Oil & Gas, Perm.Ed., § 415. The record shows that gas from the commercial well could only be marketed by the erection of a plant so that it might be converted into dry ice. No plant was even started following the final completion of this well in December, 1938.

The defendants urge they were unable to raise money to develop the lease because of threats of cancellation and the filing of the suits by de Baca attacking their title, and that such acts tolled the time for development. They cite many cases in support of such claims, but an examination of them shows they were based on wrongful claims and suits, and they are, therefore, not applicable here.

They also cite many cases holding that even though a lessee be in default for failure to develop under the implied covenants following discovery in paying quantities, cancellation will not be decreed where the lessor has failed to make demand for development and allowed a reasonable time therefor. In this case, however, many demands were made by de Baca for such development or payment of delay rentals, and although promises were made to comply with such demands they were not kept.

Owing to the expenditures made on the second well in which gas was found in paying quantities, we will give the answering defendants another opportunity to market the gas therein. Under the rules of the Oil Conservation Commission forty acres constitute a drilling unit, and we will direct the trial court to modify its decree and deny cancellation of the interests of such defendants in the lease on the forty acre tract on which the paying well was completed in December, 1938, on the condition that they proceed with reasonable diligence to market the gas from the well, and if there be no purchaser available that they proceed to the erection and operation of a plant to process it. Neither party will be allowed costs to date.

The decree of the District Court will be affirmed except for the modification here directed, and it is so ordered.

BICKLEY, C. J., and BRICE, LUJAN, and SADLER, JJ., concur.