240 P.2d 850

**TOWN OF TOME LAND GRANT, Inc. v. RINGLE DEVELOPMENT CO.**

No. 5413.

Supreme Court of New Mexico.

Feb. 11, 1952.

J. Ernest Corey, Albuquerque, for appellant.

Gilberto Espinosa, Paul Keefe, Albuquerque, for appellee.

BONEM, District Judge.

This is a suit by plaintiff (appellee), a community land grant, seeking a declaratory judgment against the defendant (appellant), adjudging that an oil and gas lease on the common lands of Tome Grant from plaintiff to defendant was terminated by the terms thereof, and for possession of the leased premises. The primary term of the lease was for a period of five (5) years from July 1, 1942, and the original lessee was the Ringle Development Corporation. The lease provides it shall remain in force for a term of five (5) years from date and

as long thereafter as oil and gas, or either of them, is produced from said land by lessee. As a result of litigation had in Cause No. 5150, District Court of Valencia County, entitled Ringle Development Company, a Corporation, v. The Town of Tome Land Grant, Incorporated, said lease was extended by judgment of the Court, dated September 1, 1948, to and including the 31st day of August, 1949, for the reason that certain litigation had deprived defendant of a period of its lease. In this action the plaintiff alleges that none of the conditions precedent contained in said lease which would have extended it beyond August 31, 1949, have been performed and that said lease is now terminated.

The case went to trial upon the issues and upon a stipulation that the only well which is capable of production without further development is one located in the Northwest quarter of Section thirty-four (34) in Township six (6) North of Range four (4) East N.M.P.M. The defendant claims the well in question is a commercially productive well, and that is the testimony of its president and general manager. The well referred to as Tome No. 1 was drilled to the depth of 827 feet and capped back to 655 feet. The last work done upon the well was the plugging on April 27, 1947. At that time the president and general manager stated the well was plugged after a showing of gas, and sufficient gas was obtained to burn 20 or 25 feet on top of the pipe. The well was not developed according to the testimony introduced by the Ringle Corporation and was not producing, but could be made to produce.

The cause was tried to the court without a jury and it found the defendant had failed to establish the existence of a producing oil and gas well and, further, that it failed to produce oil or gas from the property as required by the terms of the lease in order to perpetuate the same and that the defendant had been holding possession of the land described in the complaint without authority or permission of the plaintiff and as a trespasser. The court found judgment in favor of the plaintiff and concluded that the lease be terminated as of August 31, 1949, and that the plaintiff was entitled to possession of all the lands and property covered by said lease and that the defendant should be required to surrender possession of the premises to the plaintiff and remove all of his equipment and property therefrom. This appeal is from the judgment of the lower court.

The defendant assigns as error the finding by the lower court that the defendant had failed to establish it has a producing oil and gas well and that, in fact, it had failed to produce oil or gas from the property described, as required by the terms of the lease in order to perpetuate it, and, further, that the court erred in refusing to find

there was no immediate market for the products of said well.

■ The question involved in this appeal is whether or not the facts of the case justify the validation and extension of the lease. In the opinion of the defendant the gas well is a paying well and the depth to which production is secured, the cost of drilling and accessibility to market are material elements affecting the question of whether or not the well is a paying well. Admittedly, these elements are relevant to the general problem raised by this appeal.

Chiefly because gas cannot be stored save in the natural stratum where it is found, the courts have sought to uphold lease extensions where gas is discovered and determined to exist in marketable or paying quantities but for one reason or another cannot be readily produced and marketed. Significantly, until recent years, the remuneration of the lessor for the operation of a producing gas well was provided by leasing agreements to be a set yearly sum paid for each gas well, which sum was neither variable with nor dependent upon the amount of gas actually produced or marketed. (See Vol. 2, Summers on Oil and Gas, (Perm.Ed.) Sec. 299, P. 138, et seq.) For these reasons a doctrine has arisen that the question of whether or not the well is capable of producing in paying quantities is solely the concern of the lessee as the amount of money received by the lessor remains static whether the gas is actually produced or not. Summers, op. cit. Vol. 2, P. 140; 58 C.J.S., Mines and Minerals, § 202, P. 469; Union Gas & Oil Company v. Adkins, 6 Cir., 278 F. 854. But the lease in question does not fall within this rule. It provides:

"In consideration of the premises the said lessee covenants and agrees:

\*      \*    .  \*      \*      \*      \*

"2nd. To pay the lessor Two Hundred and Fifty Dollars each year in advance, for the gas from each well where gas only is found, *while the same is being used off the premises,* and lessor to have gas free of cost from any such well for all stoves and inside lights in the principal dwelling house on said land during the same time by making his own connections with wells at his own risk and expense." (Emphasis ours.)

That portion of the provision italicized above limits the obligation on the part of the lessee to pay the stipulated sums only for those wells where the gas produced is being used off the premises, the lessor not being entitled to receive such sum for a dormant well. Here, then, it is clearly of concern to the lessor whether or not gas is produced in paying quantities. Nor does it appear the lessor was paid such sum or that it had ever been tendered.

■ In addition, even if defendant could maintain the doctrine contended for, still

we must hold the lease was not extended by the development of the well in question. The lower court found the defendant had failed to establish the existence of a producing oil or gas well and there is ample evidence to sustain this finding. Furthermore, it appears to us that the evidence leaves the question of whether or not there had been any actual production of gas, or could be any production of gas from the well, open to opinion and conjecture, and, as a matter of fact, the opinions offered by the witnesses differed on this question. As stated by Summers, (Op. cit., Vol. 2, Sec. 299, P. 140, 141): "In situations of this sort the extension of the lease must depend upon whether the gas wells are actually capable of producing gas in marketable quantities. A well may produce large quantities of gas, but its pressure may be such that it cannot be connected with a pipe line carrying gas from wells at higher pressure without increasing the pressure through pumping. The cost of pumping may prevent the well from producing in paying quantities. A lessee cannot, therefore, pay or tender rentals for a gas well and thereby extend the term of the lease, unless he can show in good faith that the well is capable of producing in paying or marketable quantities."

It is also significant to the court that the well in question was capped on April 27, 1947; that no work was done toward the production of gas from the well subsequent to that time although this suit was not instituted until November 9, 1949; that the court had extended the term of the lease only until August 31, 1949; and that the defendant was apprised of this fact and had knowledge the term had been extended only until that time. It would appear that the defendant was not actually in good faith and that if the defendant had been in good faith it would have made some attempt to measure and develop the production of gas in this well between April 27, 1947, and August 31, 1949.

Defendant urges it has a right to some equitable relief because it has gone to considerable expense to drill and complete the well in question and that a strict construction of the lease imposes a decided hardship upon it. However, it does not appear the defendant has, itself, been entirely in good faith in the production of gas and the measuring of this production from the well so as to justify the granting of equitable relief. We think there can be no question but that the failure to produce gas within the term of the lease was the fault of the defendant lessee and the ability to produce or not produce, if gas existed, was entirely within its control. A lessee cannot be permitted to fail in development and hold the lease for speculative purposes unless in strict compliance with his contract for a valuable and sufficient consideration other than such development. 58 C.J.S.,

Mines and Minerals § 202(a), citing Banks v. Calstar Petroleum Co., 82 Cal.App.2d 789, 187 P.2d 127, and other California cases.

There may be some argument to the effect the lease in question does not contain the words, "production in paying quantities," and, therefore, that any amount of production, no matter how little, is sufficient. If this were the law, we still feel the evidence fails to show that any amount of gas had been produced from the well in question within the lease term as defined and extended by the court. The mere discovery of oil or gas cannot validate or extend a lease providing oil or gas must be produced. Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; Pace Lake Gas Co. v. United Carbon Co., 177 La. 529, 148 So. 699; Murdock-West Co. v. Logan, 69 Ohio St. 514, 69 N.E. 984; Union Gas & Oil Co. v. Adkins, 6 Cir., 278 F. 854; Berthelote v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187. The well in question has not been made to produce either oil or gas, and it is, therefore, our opinion that the lease terminates as of August 31, 1949, and the plaintiff is entitled to the possession of all the lands and property covered by said lease in accordance with the opinion of the lower court.

It follows from what has been said that the findings of fact and conclusions of law of the lower court are not erroneous and the judgment of the lower court should be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, Mc-GHEE and COMPTON, JJ., concur.