346 P.2d 1041

Mabel C. DARR and W. A. Darr, Plaintiffs-Appellants,

v.

Grace E. ELDRIDGE, Defendant-Appellee.

No. 6523.

Supreme Court of New Mexico.

Nov. 19, 1959.

Glen G. Hilford, Truth or Consequences, for appellants.

Nils T. Kjellstrom, Truth or Consequences, for appellee.

LUJAN, Chief Justice.

This is a suit to cancel a lease on certain premises in Truth or Consequences, New Mexico, on which a mineral water well is located. Hereafter, plaintiffs-appellants will be referred to as lessors, the original lessee as the lessee, and the defendant-appellee as assignee.

The lease from lessors to the predecessor in interest of the assignee was for a primary term of five years with an option to renew for successive five-year periods so long as the covenants set forth in the lease were kept and performed. The lease provided for a minimum royalty of $100 per month for the first six months of the primary term; thereafter, the royalties were based on the gallonage taken from the well (five cents per gallon on the first 4000 gallons of water taken from the well each month). The lease also contained a proviso that the lessors could, at all reasonable times, examine the books of the lessee to ascertain the gallonage sold.

At the time the well and premises were leased, the mineral water was being sold by the lessors for drinking purposes only. When the lessee went into possession he built a tub for giving vapor baths and used the mineral water for this purpose, paying the lessors five cents per bath royalty rather than five cents per gallon.

The lessors, thereupon filed suit in Sierra County against the original lessee on September 27, 1951 (Docket No. 4783) to recover a royalty of five cents per gallon of mineral water used in giving the baths rather than five cents per bath. The court indicated that its ruling would require the payment of fifty cents royalty per bath since approximately ten gallons of mineral water were used for each bath. The parties thereupon agreed to settle the royalty liability for $775. The day following the trial the lessee piped city water to the premises and discontinued the use of mineral water from the well in giving the vapor baths. Instead he, and subsequently his assignee, poured a cupful of dry minerals into the city water in the tub. Accordingly, no further royalty was paid to the lessors for baths given and this suit was instituted.

The first cause of action sought cancellation of the lease on the ground that shortly after the original lease was signed the use of the mineral water was promoted and increased by installing a vapor bath; that the lessee refused to pay the royalty as specified in the lease for the water used in the baths and that the lessors filed suit to recover this royalty and cancel the lease; that thereafter the lessee installed city water which he and his assignee used in giving the baths instead of the water from the mineral well, thereby depriving the lessors of the royalty of which they were entitled; that this action constituted a breach of the implied covenant to promote, exploit and extend the distribution and sale of the mineral water.

The second cause of action alleged that lessors had called on assignee to examine her books and found that she kept no books of account showing gallonage sold or baths given on the premises.

The third cause of action sought an accounting for all baths given on the premises alleging that the royalty should be paid on all baths given using city water since the assignee should have used mineral water from the leased well.

The trial court apparently rather reluctantly, found in favor of the assignee on all issues.

Lessors urge that the lessee of the mineral well and his assignee were bound by an implied covenant to use reasonable diligence in marketing the mineral water. We agree.

The lease in question is similar to, and should be governed by the doctrines relating to, oil and gas leases. In the usual oil and gas lease the lessor's principal com-

pensation for executing the lease is the royalty he hopes to receive on the oil and gas produced by the lessee. Merrill, Covenants Implied in Oil and Gas Leases, pp. 186, 187 (2d Ed. 1940).

In the instant case the principal remuneration, and after the first six months the only remuneration, to lessors was to be the royalty from the sale of the mineral water.

The following statement by Ryan, Implied Covenants of the Oil and Gas Lease, 29 Dicta 178 (1952), in connection with oil and gas leases is equally appropriate in regard to the lease in question:

"The oil and gas lease has been a fruitful force for the development of implied covenants * * * By such contract the lessor effectively bars himself from taking any action during the term of the lease to capture any oil or gas that may be beneath his land, to operate any wells thereon, to market any oil and gas that may be produced therefrom, or to protect himself from loss of oil or gas that may be beneath his land through wells drilled on adjoining lands." Pressler, Implied Covenants in Oil and Gas Leases, 18 Miss. L.J. 402 (1947).

Merrill, Covenants Implied in Oil and Gas Leases, p. 464 (2d Ed. 1940), states this principle as follows:

"We have seen that the courts in varying language, base the doctrine of implied covenants, other than that for protection, upon the ground that the lessor's chief remuneration is to be derived from the royalties resultant from development and operation, that this remuneration constitutes his chief inducement for executing the lease, that, therefore, the lease in all respects, must be construed as having written into it this duty of diligently promoting the productivity of the premises."

See Town of Tome Land Grant v. Ringle Development Co., 56 N.M. 101, 240 P.2d 850; Walker, The Nature of the Property Interests Created by an Oil and Gas Lease in Texas, 11 Tex.L.Rev. 299, 401 (1933).

■ Obviously production without disposition of the product is futile. Thus the courts have developed the implied covenant "to make diligent efforts to market the production in order that the lessor may realize on his royalty interest." Wolfe v. Texas Co., 10 Cir., 83 F.2d 425, 432; Libby v. De Baca, 51 N.M. 95, 179 P.2d 263.

The same logic and equitable principles being applicable, the courts have implied the four basic oil and gas lease covenants, including the covenant to exercise reasonable diligence to market, to mill leases, farming leases and so-called solid mineral leases, *as well as to a covenant granting a right to sell mineral water from the land of another*. Merrill, Covenants Implied in

Oil and Gas Leases, p. 456 (2d Ed. 1940) and cases cited therein; Hill v. Lockwood, C.C., 32 F. 389; Freeport Sulphur Co. v. American Sulphur R. Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890; Taylor v. Kingman Feldspar Co., 41 Ariz. 376, 18 P.2d 649; 3 Summers, Oil and Gas, § 453 (Perm.Ed.).

■ If equity demands that the covenant to market be implied in oil and gas leases, certainly such a covenant must be implied in the present lease. Here the lessor parted not only with the mineral well but also with the surface estate. In the absence of an implied covenant to use reasonable diligence to market the mineral water, the lessee could continue to hold the property indefinitely without selling, and indeed without attempting to sell, a single gallon of mineral water. And this despite the fact that the lessee had not even drilled the well and the lessor had covenanted not to engage in the same business.

■ We are aware that the appellant filed no requested findings of fact with the trial court and that when such is the case there can be no review of the evidence. Owensby v. Nesbitt, 61 N.M. 3, 293 P.2d 652. However, Finding 10 by the court "that the only obligation of the defendant under the terms of the lease is to account to the plaintiffs for the water taken from the well" is in actuality a conclusion of law.

And Finding 3 to the effect that the covenants in said lease have been kept and performed by the defendant is bottomed on Finding 10. Both conclusions are based upon an erroneous interpretation of the lease and must fall.

Since the court found no implied covenant to market the water, quite naturally it did not consider or determine whether there had been any breach of the same.

■■ Assuming for the moment that the implied covenant was breached the question arises whether cancellation will be decreed for such breach. The general rule in the case of ordinary leases is that it will not unless the lease contains an express proviso to that effect. Shultz v. Ramey, 64 N.M. 366, 328 P.2d 937. However, the decisions holding that cancellation will be decreed for breach of an implied covenant in oil and gas leases preponderate. 3 Summers, Oil and Gas, §§ 453 through 468 (Perm. Ed.) ; Merrill, Covenants Implied in Oil and Gas Leases, p. 362 (2d Ed. 1940). And this is the rule that has been established in this jurisdiction. Libby v. De Baca, supra. As heretofore pointed out, the lease in question should be governed by the principles applicable to oil and gas leases including the doctrine that such a lease will be cancelled for failure to exercise reasonable diligence in marketing the product. And such cancellation will be decreed against an assignee of the lease. Merrill, Covenants Implied in

Oil and Gas Leases, p. 392, (2d Ed. 1940); Humphreys Oil Co. v. Tatum, 5 Cir., 26 F.2d 882; Phillips Petroleum Co. v. Taylor, 5 Cir., 116 F.2d 994.

The equitable remedy of cancellation is perhaps the only one which will effectuate justice and prevent undue hardship if the implied covenant to market was breached in this case. Damages would be conjectural and speculative, and if the trial court determines that under the evidence in this case there has been a breach of the implied covenant to market, cancellation should be decreed so that the lessors may exploit the product from the well which they drilled. See 3 Summers, Oil and Gas, § 463 (Perm.Ed.).

The trial court was correct in concluding that the action for an accounting was not well taken. The use of city water in giving the baths did not deplete the products underlying the mineral well.

Other claimed errors having no merit, the judgment is reversed and the cause remanded to the trial court with a direction to determine from the evidence whether the assignee made a sincere, reasonable and conscientious effort to develop a market for the mineral water.

It is so ordered.

McGHEE, COMPTON, CARMODY and MOISE, JJ., concur.