362 P.2d 500

J. Felix HICKMAN and Malco Refineries, Inc., a New Mexico corporation, Plaintiffs-Appellees,

Murray E. Morgan, Commissioner of Public Lands, State of New Mexico, Intervening Party Plaintiff-Appellee,

**v.**

Henry A. MYLANDER, Walter C. Mylander, Jr., Mathilde M. Hebb, Harriett M. Maling, a/k/a Harriet F. Maling and Mrs. Henry F. Maling; Following named Defendants by name, if living, if deceased, their unknown heirs: William F. Mylander, Clara A. Mylander, May R. Mylander and A. H. Palmer; Unknown heirs of the following named deceased persons: Dora Mylander, Kate E. Mylander, a/k/a Kate Mylander, Walter C. Mylander and August C. Mylander; and Unknown Claimants of Interest in the Premises Adverse to Plaintiffs, Defendants-Appellants.

No. 6709.

Supreme Court of New Mexico.

June 2, 1961.

R. J. Matteucci, Avelino V. Gutierrez, Albuquerque, for appellants.

Rodey, Dickason, Sloan, Akin & Robb, William C. Briggs, Albuquerque, for plaintiffs-appellees.

William O. Jordan, Sp. Asst. Atty. Gen., for intervening party, plaintiff-appellee.

CHAVEZ, Justice.

Appellees, plaintiffs below, filed suit to quiet title to the leasehold interest in all oil and gas to a depth of 2516 feet under the following described lands: NE¼NE¼, S½NE¼, SE¼SE¼, Sec. 16, T. 26 N., R. 8 W., N.M.P.M., San Juan County, New Mexico.

Appellants, defendants below, filed answer and counterclaim asserting title to the same leasehold interest in the said lands and asking for ejectment of appellees from the premises. The parties stipulated that appellees were entitled to the relief sought in their complaint, subject to proof by appellants of their paramount title. The Commissioner of Public Lands of New Mexico was allowed to intervene. At the close of appellants' (counterclaimants') case in chief, appellants rested. Appellees also rested. Appellees then moved to dismiss appellants' counterclaim and the trial court granted said motion. The trial court made findings of fact and conclusions of law and entered judgment for appellees. From this judgment, appellants filed this appeal.

Appellants claim title to the leasehold interest as heirs of Dora and Kate Mylander under state oil and gas leases numbered B–9320 and B–9096 issued to one A. H.

Palmer. Palmer assigned the lands involved in this suit, together with other lands, to Dora and Kate Mylander. Dora Mylander died and her interest in the lease passed to Kate Mylander as the sole heir and devisee of Dora Mylander. Thereafter Kate Mylander was declared an incompetent and Thomas A. King was appointed as her guardian. On August 11, 1950, Thomas A. King, guardian of the estate of Kate Mylander, an incompetent, assigned part of the lands included in lease B–9320, acquired from Palmer, to Slick-Moorman Oil Company. On December 20, 1950, Slick-Moorman committed the same assigned lands to the Huerfano Unit Area by signing the agreement establishing the unit. Thomas A. King, guardian, likewise signed the same agreement committing the retained royalty under the said land.

From lease B–9096, Palmer assigned 400 acres to one Francis Xavier Obold, and Obold in turn assigned a portion of said acreage to Slick-Moorman Oil Company, who committed the acreage obtained from Obold to the Huerfano Unit Area. Obold likewise ratified and joined in the Huerfano Unit Area Agreement.

The unit agreement for the development and operation of the Huerfano Unit Area, San Juan County, New Mexico, was entered into on July 29, 1949. The unit agreement involved some 63,122.05 acres, more or less

The unit area agreement was approved by the New Mexico Oil Conservation Commission, the Commissioner of Public Lands of New Mexico, and the U. S. Geological Survey, before its effective date of July 1, 1950. There was no production of oil or gas in paying quantities within leases B–9320 or B–9096 before their due expiration dates of September 29 and April 17, 1951, respectively. On April 10, 1952, the Commissioner of Public Lands executed oil and gas lease E–6145 to Malco Refineries, Inc., embracing the $NE\frac{1}{4}NE\frac{1}{4}$, $SW\frac{1}{4}NE\frac{1}{4}$, $SE\frac{1}{4}NE\frac{1}{4}$, and $SE\frac{1}{4}SE\frac{1}{4}$ (together with the $NW\frac{1}{4}SE\frac{1}{4}$ not involved herein), Sec. 16, T. 26 N., R. 8 W. Malco Refineries, Inc. entered into an operating agreement with appellee, J. Felix Hickman, on September 12, 1956, by which said Hickman was assigned the leasehold interest of Malco Refineries, Inc. in the oil and gas to a depth of 2516 feet.

The pertinent findings of fact made by the trial court were that portions of the land contained in oil and gas leases numbered B–9320 and B–9096, together with other lands, were committed to the Huerfano Unit Agreement, but no part of the lands in issue in this case were committed to the Huerfano Unit Agreement; that lease B–9096, and the secondary term thereof, expired on April 17, 1951, unless extended by production of oil or gas in paying quantities from some portion of the land covered by said lease prior to April 17, 1951; that

lease B–9320, and the secondary term thereof, expired on September 29, 1951, unless extended by production of oil or gas in paying quantities from some portion of the lands covered by said lease prior to September 29, 1951; that there was no production of oil or gas in paying quantities from any part of the leased premises, or from any part of any of the lands comprising the Huerfano Unit Area, either on or prior to September 29, 1951, as required by lease B–9320, or on or prior to April 17, 1951, as required by lease B–9096.

The trial court then concluded that lease B–9096 expired on April 17, 1951, as to the lands embraced in said lease which are in issue in this cause; that lease B–9320 expired on September 29, 1951, as to the lands embraced in said lease which are in issue in this cause; that the secondary term of leases B–9096 and B–9320, as it concerned the lands involved herein, was not extended by the mere execution of the Huerfano Unit Agreement, said lands not having been committed to the unit agreement. The court also concluded the title to the mineral interest in controversy should be quieted as against appellants. In brief, the trial court found and concluded that only those portions of the two leases which were included within the unit area were governed by the provisions of the unit agreement.

Appellants contend that all of the lands contained in leases B–9320 and B–9096 are governed by the provisions of the unit agreement. Appellants rely upon part of the provisions of paragraph 16 of the unit area agreement to sustain their contention. This paragraph provides:

"Said parties further consent and agree, and the Secretary or his duly authorized representative, and Commissioner by their respective approvals hereof determine, that during the effective life of this agreement, drilling and producing operations performed by the Unit Operator upon any unitized land will be accepted and deemed to be operations under and for the benefit of all unitized leases embracing land of the United States and of the state of New Mexico; that no such lease shall be deemed to expire by reason of failure to produce wells situated on land therein embraced; and that all leases or other contracts concerning such land, except as otherwise provided herein, shall be modified to conform to the provisions of this agreement and shall be continued in force and effect beyond their respective terms during the life of this agreement. * * *"

We commence with the principle that the Commissioner of Public Lands of New Mexico is merely an agent of the state with such powers, and only such, as have been conferred upon him by the constitution and laws of the state, as limited by the Enabling Act. State ex rel. Del Curto

v. District Court of Fourth Judicial Dist., 51 N.M. 297, 183 P.2d 607; and Zinn v. Hampson, 61 N.M. 407, 301 P.2d 518.

The authority granted to the Commissioner of Public Lands with respect to the terms of oil and gas leases is contained in § 7–11–41, N.M.S.A.1953 Comp., as follows:

"7–11–41. Amendment of leases to conform with cooperative agreements. —When any such agreement has been approved by the commissioner, he *may,* with the approval of the lessee evidenced by the lessee's execution of such agreement or otherwise, *amend any oil or gas lease embracing state lands within the area included in such agreement so that the provisions of such lease so far as they apply to lands within such area will conform to the provisions of such agreement and so that the length of the secondary term as to lands within such area will be extended, insofar as necessary, to coincide with the term of such agreement,* and the approval of such agreement by the commissioner and the lessee, as aforesaid, shall without further action of the commissioner or the lessee be effective to conform the provisions *and extend the term of such lease as to lands within such area,* to the provisions and terms of such agreement; or the commissioner may permit the holder of any such lease of state lands within such area to surrender such lease, so far as it embraces lands within such area, with the preference right to a new lease for the lands surrendered, containing such provisions and for such a term as will conform to the provisions and term of such agreement. The commissioner is authorized to issue such new lease under regulations prescribed by him. No law applicable to restricted districts and the making of oil and gas leases therein, or providing for a minimum rental within restricted districts, shall be applicable to any lease conformed or issued hereunder.

"If any such agreement provides for extensions of the term thereof, any such extension pursuant to the provisions of such agreement shall, with the approval of the commissioner, be effective also to extend the term of such lease, so far as it applies to lands within such area, to coincide with the extended term of such agreement." (Emphasis supplied.)

█ It seems to us that the unit agreement must be read in the light of § 7–11–41, supra, and so reading the statute, we conclude that it authorizes amendment of leases as far as the terms are concerned only as to lands included within the unit area. The Commissioner of Public Lands was correct in not extending the term of the leases except as to the lands included within the unit area and the trial court did not commit error in holding that only those -

portions of leases numbered B–9320 and B–9096 included within the unit area were governed by the terms and provisions of the unit agreement. We recognize that, absent the statute, an argument may be justified that under paragraph 16 of the unit agreement the lease shall not be deemed to expire and that the lease shall be modified to conform to the provisions of the agreement. However, as concerns the term of the lease, under the terms of the statute paragraph 16 of the unit agreement could only apply to lands within the unit, as the Commissioner of Public Lands is only authorized to amend any lease within the unit area.

Appellants cite State ex rel. Shell Petroleum Corporation v. Worden, 44 N.M. 400, 103 P.2d 124, as authority for their position. We do not believe that the Worden case sustains appellants' contention. The Worden case involved a state oil and gas lease wherein the original lessee had made assignments of parts of the lease. An oil well was completed on one of the 40-acre tracts assigned. The annual rentals were paid on the 40-acre tract assigned to relator until December 7, 1938, and on that date relator tendered Worden, the Land Commissioner, the sum of $40 as rental thereon for the year beginning December 8, 1938, which tender Worden refused to accept claiming that the lease had expired because oil in commercial quantities had not been produced from said 40-acre tract prior to December 8, 1938. Worden contended that on December 8, 1938, the secondary term of the lease expired unless oil and gas in paying quantities had been produced therefrom. Relator had not made any exploration for oil or gas on the 40-acre tract in question. We held that where a lessee had ten years within which to produce oil and gas in paying quantities, that upon so producing oil and gas, that the lease continued in force so long as oil and gas in paying quantities was so produced, and that an assignee of a portion of the lease succeeded to all of the rights of the original lessee, subject to the continued payment of the specified rentals and subject to the implied covenant to develop with reasonable diligence the undeveloped portion of the leased land.

Under point II appellants urge that the trial court erred in its conclusion of law that leases B–9320 and B–9096 were not extended beyond their expiration dates because there was no production of oil or gas in paying quantities, prior to said expiration dates, within the leased premises or within the Huerfano Unit Agreement. They contend that the life term of the two oil leases involved should have been extended by the claimed production obtained within the unit area prior to September 29, 1951, and April 17, 1951, the expiration dates provided in the leases. We cannot agree.

The evidence upon which appellants rely as showing that there was production in

paying quantities, and that production anywhere in the unit area would extend the term of the leases even as to portions outside of the unit, consists in part of a certain letter written by Foster Morrell, Oil and Gas Supervisor, U. S. Department of Interior, dated November 15, 1950, relating to the Heurfano Unit Agreement. In said letter, Morrell suggested that certain instruments be filed in order to comply with the unit agreement providing that within six months after completion of a well capable of producing unitized substances in paying quantities, that the unit operator should submit for approval an acceptable plan of development and operation of the unitized land. Morrell also refers to the recent completion of a well on or about October 18, 1950, in Sec. 25, T. 26 N., R. 10 W., as a producing gas well.

Appellants further rely upon the plan of development for the Huerfano Unit, which said plan refers to "the successful completion of Huerfano Unit Well * * * on October 21, 1950, * * * for an initial potential of 428,000 CFGPD."

Appellants also rely on the application for approval of participating area for the Pictured Cliff Zone, Huerfano Unit, San Juan County, New Mexico, filed by Stanolind Oil and Gas Company on August 2, 1951, wherein there was submitted for approval a selection of lands to constitute the initial participating area found to be productive

at depths between 2037 and 2092 feet in the Huerfano Unit well.

Appellants further rely on an exhibit which traces the history of the well showing requests for gas allowable, certificate of compliance, and authorization to transport oil and gas, etc., as well as the testimony of F. H. Stevens, Jr., who expressed the opinion that the well was capable of producing in paying quantities.

■ The most that can be said of the above mentioned testimony is that there was a completion of a gas well which had an initial potential of 428,000 C.F.G.P.D. It is to be noted that the application for approval of the participating area was filed on August 2, 1951, after lease B–9096 had expired, and nowhere in all of the testimony is there evidence that gas in paying quantities was produced from the well in question from the time the gas well was completed on or about October 18, 1950, to September 29 and April 17, 1951, the expiration dates provided in the said leases. In Town of Tome Land Grant v. Ringle Development Co., 56 N.M. 101, 240 P.2d 850, we held that the mere discovery of oil or gas cannot validate or extend a lease providing oil or gas must be produced.

■ The trial court, who heard all of the evidence, found that there was no production of oil or gas in paying quantities from any part of the leased premises, or from any part of the lands comprising the

Huerfano Unit Area, prior to the expiration of the two above mentioned oil and gas leases, and also found that said leases expired by their express terms on September 29, 1951, and April 17, 1951, respectively. There· is substantial evidence to support this finding.

Appellants also argue that since the trial court dismissed the case at the conclusion of appellants' case in chief on their ·counterclaim, all evidence introduced by appellants must be taken as true. The record discloses that the trial court made·its ruling after appellees (plaintiffs below) and appellants (defendants and counterclaimants below) had closed their case and rested. The trial court undoubtedly acted pursuant to Rule 21-1-1(41) (b) which provides that after plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal upon the ground that upon the facts and the law the plaintiff has shown no right to relief. Under this rule the trial court, as the trier of the facts without a jury, is not bound to give appellants' and counterclaimants' testimony the most favorable possible aspect, together with all reasonable inferences there-'from. Rather, it is the trial court's duty to give appellants' and counterclaimants' testimony such weight as he believes it is entitled to receive. Allred v. Sasser, 7 Cir., 170 F.2d 233; Penn-Texas Corporation v.

Morse, 7 Cir., 242 F.2d 243; Henry v. Moore-McCormack Lines, D.C.1955, 134 F. Supp. 71; United States v. Bartholomew, D.C.1956, 137 F.Supp. 700; 5 Moore's Federal Practice, 2d Ed., §§ 41.13(3), 41.13(4).

Since we adopt the rule now definitely established in the federal courts that a trial court, being the trier of the facts, has the power of applying its own judgment and may grant or deny a motion to dismiss under our present Rule 41(b), the case of Olivas v. Garcia, 64 N.M. 419, 329 P.2d 435, and other prior cases which are to the effect that a demurrer to the evidence raises only a question of law, are no longer applicable.

Also, no attack is made upon the findings of the trial court. This court has repeatedly held that the findings of fact made by the trial court are the facts upon which the case must rest, unless set aside by the Supreme Court. White v. Wheeler, 67 N.M. 346, 355 P.2d 282.

We have reviewed the record and find there is substantial evidence to support the trial court's findings that there was no production of oil or gas in paying quantities from any part of the leased premises, or from any part of the lands comprising the Huerfano Unit Area, on or prior to September 29, 1951, as required by lease B–9320, or on or prior to April 17, 1951, as required by lease B–9096. We hold that the trial court did not commit error in its con-

clusion of law that the secondary term of leases B–9096 and B–9320 was not extended by the mere execution of the Huerfano Unit Agreement, insofar as the lands herein involved are concerned, said lands not having been committed to said unit agreement.

Finding no error in the record, the judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY and MOISE, JJ., concur.

NOBLE, J., not participating.